LOWE & CAMPBELL ATHLETIC GOODS CO., PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22089. Promulgated February 13, 1930.

*Justin D. Bowersock, Esq.*, for the petitioner.
*G. S. Herr, Esq.*, for the respondent.

OPINION.

LANSDON : Since no deficiency in taxes has been asserted for either 1919 or 1920, this Board is without jurisdiction to consider the alleged errors in respect thereto. The respondent's motion to dismiss, therefore, must be sustained. *Cornelius Cotton Mills*, 4 B. T. A. 255.

In respect of the petitioner's claim for a deduction of $3,731.99 from its gross income for 1921 upon the ground that this amount of the sum expended by it in improving and making alterations in the building located on its leased property represents " repairs " and, therefore, a part of its business expense for 1921, the record shows that, except for the renewal of paint from time to time, all of these improvements had a useful life at least equal to the term of the lease and that they were used by the petitioner during such term. In these circumstances, it is clear that such expenditures can not be included in ordinary business expenses for a single year, but that they were made for and inured equally to each of the five years and are amortizable over the entire term of the lease. The action of the respondent in respect to this claimed deduction is, therefore, approved. *National City Bank of Seattle*, 1 B. T. A. 139; *Louis C. Levy*, 2 B. T. A. 361; *H. Citrin*, 2 B. T. A. 626; *Rosenfield Dry Goods Co., Ltd.*, 4 B. T. A. 373.

The testimony shows that included in the petitioner's gross expenditure of $5,724.89 for improvements and removal to the new location were disbursements of less than $100, as cost of cleaning up the building, and one of $69 for the hire of a truck used in moving. These, it is argued, are expenses for the year in which paid, and deductible as such. Such expenditures are ordinarily classed as a part of the expense of a business as claimed by the petitioner, but since in this case the record shows that the petitioner claimed and was allowed upon its return for 1921 a deduction of $800 for " moving expenses," we can not say that the respondent erred in rejecting these items, more particularly since the sum actually expended by the petitioner on improvements and equipment exceeds the amount involved in the claimed deduction by more than the total of these

items. The allegation of error in respect to this claimed deduction is, therefore, overruled.

We next come to the important question as to the petitioner's right to special assessment under the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921, which it claims on account of alleged abnormalities affecting its invested capital and income for the year involved. The governing provisions of these acts in respect to the right to special assessment are in section 327, as follows:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

(b) In the case of a foreign corporation  *  *  *

(c). Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively;

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The petitioner does not contend that its invested capital for 1921 could not be determined for that year so as to bring it within the provisions of subparagraph (a) of the above section, or that right to special assessment is authorized by either (b) or (c) of the section. It bases its claim wholly upon the provisions of subparagraph (d) and alleges that, because of low salaries paid to its officers and the economy of its plan of operations which enabled it to deal directly with its customers and through a system of credits that avoided the necessity of maintaining heavy capital investments, its net income for the year was " abnormally high in comparison with the income of such representative corporations "; that such high rate of earnings " resulted in an exceptional hardship being worked on the petitioner by the gross disproportion of the tax computed without the benefit of said section 327, and the tax computed by reference to representative corporations engaged in a like or similar trade or business."

There is no evidence in the record to show the monetary value of the services rendered by the officials of the petitioner to it in the year involved. The annual salaries paid to the president and vice president for 1921 were $6,600, each, and to the secretary and treasurer, $3,960. In addition to these, it further paid during the year $76,- 816.65 for "Labor & Salaries of Employees." It also spent during the year $16,908.12 for catalogues and since, as testified to by Vice President Campbell, "our business was almost entirely a mail order business," we are unable to determine what proportionate part of the net income of $61,133.88 earned by the petitioner for the year should be attributable to the efforts of the officers, or that they were, in fact, underpaid for their services rendered. *Edwin M. Knowles China Co.*, 9 B. T. A. 1292. It is clear that a distortion of the petitioner's income for the year on account of underpayment of salaries to its officers, so as to entitle it to special assessment under section 327, has not been established. *Freedom Oil Works Co.*, 9 B. T. A. 823.

Upon the facts shown here we can not find that the net income of the petitioner for the year 1921, if taxed without the benefit of section 327, *supra*, would work upon it an exceptional hardship in comparison to the tax paid by representative corporations similarly engaged. The principal argument urged by the petitioner in support of this claim is based upon the theory that, because of its unique system of dealing directly with its customers and the manufacturers, which enabled it to effect sales and reap the profits thereon without carrying heavy stocks of merchandise, and of certain advantages it enjoyed over its competitors because of the identification of its officers with organized athletic activities, its income was abnormally high as compared to its invested capital, and that such fact, more particularly when considered in connection with other circumstances shown, entitles it to the benefits of such section. We are unable to accept the views thus, so earnestly, urged by the petitioner. The section of the Revenue Act relied upon specifically states that its provisions shall not apply to any case in which the tax is high "merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital." There is nothing in the record to show that the earnings of this corporation for this year, though large, were anything more than the natural result of good business methods, well applied to favorable conditions in a prosperous year. The petitioner, therefore, has not produced sufficient evidence to show that it is entitled to special assessment under the provisions of the Act pleaded. *United Shoe Stores Co.*, 2 B. T. A. 73; *Cleveland & Western Coal Co.*, 4 B. T. A. 93; *Eagle Piece Dye Works*, 10 B. T. A. 1360.

*Decision will be entered for the respondent.*