EMPLOYEES INDUSTRIAL LOAN ASSOCIATION, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44203. Promulgated March 16, 1933.

946

*Abraham Lowenhaupt, Esq.*, and *Stanley S. Waite, Esq.*, for petitioner.

*J. H. Pigg, Esq.*, for respondent.

948

Leech: The Revenue Acts of 1921, 1924 and 1926, in Title II, Part III, Corporations, provide:

Sec. 231. That the following organizations shall be exempt from taxation under this title—
* * * * * * *
(4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; * * *

This section was a reenactment of section 231 (4) of the Revenue Act of 1918, with the exemption therein described expressly limited in the later acts to " domestic building and loan associations *substantially all the business of which is confined to making loans to members.*" (Italics supplied.)

The Revenue Act of 1921, as originally reported to and passed by the House of Representatives, limited the exemption to " domestic building and loan associations *operated exclusively, for the purpose of making loans to members.*" (Italics supplied.) Section 234, H. R. 8245. This significant additional limitation was inserted, undoubtedly, to prevent abuse of the exemption by " some mortgage and investment companies * * * operating in the guise of building and loan associations." Page 13, Report of Committee on Ways and Means, H. R. 8245. The Senate apparently refused such absolute restriction of the exemption, and amended the section in the form in which it ultimately became law. Cf. Revenue Acts of 1921, 1924 and 1926, Title II, Part III, Corporations, sec. 231 (4), *supra.*

While the stipulated articles of incorporation of petitioner show its organization under Article 7, Chapter 35, Revised Statutes of Missouri, 1909, this is obviously an error, for such statute refers only to juvenile courts. The same stipulation further describes the enabling act as " governing manufacturing and business companies." Thus, incorporation must have been effected under Article 7, Chapter 33, Revised Statutes of Missouri, 1909, (and amendments thereto) which, so far as we know, was then the only effective legislation answering this description, and section 3346 specifically excludes building and loan companies from its provisions.

The applicable statutes of Missouri, under which, alone, building and loan associations could there be incorporated at the time of incorporation of petitioner, and which carefully defined and limited their operations during the period in dispute, may be summarized as follows:

Article 9, Chapter 90, Revised Statutes, Missouri, 1919, provides for the organization of " Mutual Savings Fund, Building and Loan Associations." Section 10196 provides that they may be incorporated

by not less than 25 persons for the purpose of assisting each other and others who may afterwards become associated with them, in acquiring real estate, making improvements thereon and removing incumbrances therefrom, by advancing to its members, out of its accumulated fund, a sum equal to the par value of their respective shares. (Laws of 1915.) Section 10197 provides that the words "building and loan association" or "savings and loan association" shall form a part of its name. (Laws of 1915.) Section 10205 provides that security for loans shall consist of a nonnegotiable note or a bond secured by a first mortgage or deed of trust on real estate accompanied by a transfer and pledge of the member's shares of stock, or, the member's shares may be accepted as security if the loan is not in excess of nine-tenths of the withdrawal value thereof. (Laws of 1915.) Compare similar provisions of Article 8, Chapter 33, Revised Statutes, Missouri, 1909, and Article 8, Chapter 32, Revised Statutes, Missouri, 1929.

Without discussing the meagre facts, all of which are stipulated and appear in our findings of fact, we are of the opinion the record conclusively establishes that petitioner was neither organized nor its business conducted pursuant to Missouri statutes governing building and loan associations, nor was it, during the years in controversy, recognized as a building and loan association by the incorporating state.

In the case of the *United States* v. *Cambridge Loan & Building Co.*, 278 U. S. 55, the Supreme Court had before it *only* the meaning to be given the words "domestic building and loan associations" in the cited sections of the Revenue Acts of 1918 and 1921. The court there held that a company incorporated under the laws of a state by which it is recognized as a building and loan association and which conducts its business in accordance with such laws, is a domestic building and loan association within the meaning of section 231 (4) of the Revenue Act of 1921. Nor is this legal classification lost to a taxpayer seeking the benefit of the exemption by the mere exercise of a power given such association by a state statute authorizing the borrowing of money and acceptance of deposits from and loans to nonmembers, provided there is no gross misuse of the name and the additional qualification, expressly stated in the Act, is met. This qualification is, that substantially all the business of such associations be confined to making loans to its members.

Obviously, petitioner is not entitled to the exemption, since it does not satisfy the definition of domestic building and loan associations. Cf. *United States* v. *Cambridge Loan & Building Co.*, *supra; Guaranty Building & Loan Co.*, 27 B. T. A. 754. There is another and equally poignant reason for refusing the benefit of the

exemption in the case at bar. In our judgment, petitioner herein comes squarely within the category of those organizations which Congress meant to exclude from this exemption by the express qualification mentioned. In each of the years here involved, more than 50 per cent of petitioner's loans were made to nonmembers, so that regardless of the manner in which it was organized or its recognized status by the state of incorporation, the express qualification added in the Revenue Acts of 1921, 1924 and 1926, discussed above, is not met, for, certainly, substantially all of its business was not confined to making loans to members.

In assessing the 25 per cent penalty against petitioner for each of the years in controversy, the Commissioner was acting under authority of section 3176, Revised Statutes, as amended and reenacted by sections 1311, 1003, 1103, of the Revenue Acts of 1921, 1924 and 1926, respectively, which directs that the Commissioner *shall* add to the tax, 25 per cent of its amount in case of any failure to make and file a return or list within the time prescribed, except when a return *is filed* after such time and it is shown that failure to file at the proper time was due to a reasonable cause. There is no question of fraud in this proceeding. The returns prepared by the revenue agent, after an examination of the petitioner's affairs, did not constitute belated returns of petitioner, for they were not signed and sworn to by petitioner's officers and were not the returns required by law to be filed by this petitioner. Cf. *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245. Therefore, it can not be successfully contended that returns were filed after the due date and that the delay was due to a reasonable cause, namely, reliance upon the Commissioner's ruling that petitioner was exempt from tax. Had the petitioner's proper officers signed and sworn to the returns prepared by the revenue agent when requested to do so, the petitioner might have successfully avoided the imposition of the penalties. No returns having been filed by petitioner for the years in controversy, the imposition of the ad valorem penalties is required by statute, even though petitioner, relying upon an early ruling of the Commissioner as to the year 1921, may have believed that it was exempt from tax. Cf. *Searles Real Estate Trust*, 25 B. T. A. 1115; *Moulton Green, Trustee*, 24 B. T. A. 1121; *Southern Ice & Fuel Co.*, 10 B. T. A. 1213; *American Milk Products Corp.* v. *United States*, 41 Fed. (2d) 966 (Ct. of Cls.).

The statute of limitations runs against the Government only when it assents and upon the conditions prescribed, *Lucas* v. *Pilliod Lumber Co.*, *supra*. Section 250 (d) of the 1921 Act and section 277 (a) (1) of the 1924 and 1926 Acts prescribed the period of time within which the Commissioner may determine, assess and collect taxes

after the return required by law has been filed. Section 250 (d) of the 1921 Act and section 278 (a) of the 1924 and 1926 Acts provide that in the case of failure to file a required return the assessment and collection may be made by the Commissioner at any time after the tax becomes due. The assessment and/or collection of the deficiencies in question are not barred by the statute of limitations. Cf. *Lucas* v. *Pilliod Lumber Co.*, *supra; Corona Coal & Coke Co.*, 11 B. T. A. 240; *William A. Richards*, 15 B. T. A. 800; *Frederick L. Watson*, 25 B. T. A. 971.

Section 3176 of the Revised Statutes provides that the ad valorem penalties shall be added to the tax and collected in the same manner as the tax.

We conclude that the Commissioner correctly determined the deficiencies and penalties in controversy and that the assessment and/or collection thereof is not barred. Cf. *Robert Van Iderstine, Trustee*, 24 B. T. A. 291.

*Judgment will be entered for the respondent.*