HELMUTH HEYL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79364. Promulgated March 26, 1936.

*Harry Abt, C. P. A.*, for the petitioner.
*Paul Sebastian, Esq.*, and *Victor Garland, Esq.*, for the respondent.

OPINION.

MELLOTT: In this proceeding petitioner contests respondent's determination of a deficiency in income tax for the years 1918 and 1921 in the respective amounts of $743.24 and $97.86, or a total of $841.10. Notice of the deficiency was duly mailed to petitioner on February 8, 1935.

Petitioner alleges in his petition that collection of the tax is barred by the statute of limitations; that respondent erred in calculating the tax on gross income instead of on net income; and that he erred "in failing to make proper adjustment against the stated deficiency of overpayment of taxes improperly calculated, * * * collected * * * and withheld" by him.

No oral evidence was adduced, the case being submitted upon the pleadings, the statements and admissions of counsel, and a brief stipulation of facts dictated into the record. All of the facts being stipulated or admitted, for the purposes of this decision they may be summarized briefly as follows:

Petitioner is an individual residing in Buffalo, New York. In 1907 his mother created a trust estate, in which he and his brother were beneficiaries, the Wisconsin Trust Co. of Milwaukee, Wisconsin, being the trustee. Under the trust, petitioner was to receive $1,000 per year when he attained age 21, with an increase of $500 each year thereafter until his younger brother became 30 years of age, at which time petitioner was to receive one half of the corpus of the trust.

In 1917, after the United States entered the World War, the corpus of the trust, which was not yet vested in the beneficiaries, was seized by the Alien Property Custodian and held by him from 1917 to some time in 1927, the exact date not being disclosed.

The property consisted chiefly of real estate, rentals from which were income to the trust estate and to the beneficiaries until March 18, 1921, on which date petitioner became the owner of a 50 percent interest in the trust property, and thereafter the rentals were income to petitioner to the extent of 50 percent thereof.

The Wisconsin Trust Co., trustee, collected the rents and turned them over to the Alien Property Custodian. The Alien Property Custodian also received other property belonging to petitioner, including the profit on maturity of a certain life insurance policy. Petitioner had no control of the property or the income therefrom during the period it was held by said custodian.

Petitioner made no return of income for either of the taxable years before us, and no return of income for either of said years was made in his behalf. No tax was assessed or collected for said years and it was stipulated that the deficiency determined by the respondent for those years is correct.

Upon the hearing before us petitioner took the position that under section 24, Trading With the Enemy Act, as amended by section 18, Settlement of War Claims Act of 1928 (40 Stat. 411, as amended by 42 Stat. 1511, as amended by 45 Stat. 254) and the Treasury decisions and regulations thereunder, it was competent, relevant, and highly material for him to show what had happened during the period of time that the property was in the custody of the Alien Property Custodian with especial reference to tax collected for the year 1922.

The respondent objected to such evidence, but ruling upon such objection was deferred by the presiding Member. Respondent admitted, however, that, if the Board decided that the year 1922 should be considered, the facts with reference thereto are as follows: On March 15, 1924, the Alien Property Custodian paid to the Bureau of Internal Revenue the sum of $1,219.99 as income tax for the year 1922. The tax was computed upon the gross income of the trust estate, which amounted to $14,333.21, whereas the net income of the trust estate was $2,768.73, upon which the tax, computed under the applicable revenue act, was $70.75. There was, therefore, an overpayment in tax for the year 1922 in the amount of $1,149.24.

We hold that the evidence relative the year 1922 is not properly before us, is not competent, relevant, or material to any issue cognizable by us, and can not be considered. The reasons for our ruling will appear hereafter, and petitioner's exception to such ruling is hereby noted; but we shall first consider petitioner's contention that the collection of the tax is barred by the statute of limitations.

Petitioner cites section 250 (d) of the Revenue Act of 1918, which provides that, except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made.

He insists that "the shorter of the two alternative limits should prevail" and the section should be construed as starting the running of the statute of limitations when the 1918 return was due. This view is untenable. It is doubtful if the section has any application here, for the petitioner failed to file any return and no return was filed for him. Section 276 of the Revenue Act of 1934 (which is the same as section 276 (a) of the 1932 Act and 278 (a) of the 1926 Act) provides that, "In the case of * * * a failure to file a return the tax may be assessed * * * at any time." This was the holding of the courts even prior to the enactment of the statute. Cf. *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245; *Florsheim Brothers Drygoods Co., Ltd.* v. *United States*, 280 U. S. 453; *Employees Industrial Loan Association, Inc.*, 27 B. T. A. 945. It follows that the tax is not barred by the statute of limitations.

It should also be noted that section 24, Trading With the Enemy Act, as amended by the Settlement of War Claims Act of 1928, *supra*, did not create any new period of limitations upon the assessment and collection of taxes. (See G. C. M. 4978, C. B. VII-2, p. 163.)

Petitioner argues quite persuasively that the facts in the instant case cry aloud for the application of the theory of recoupment applied recently by the Supreme Court in *Bull* v. *United States*, 295 U. S. 247. That case originated in the Court of Claims, which, as the Supreme Court points out, is not bound by any special rules of pleading, the pleading therein being sufficient to put in issue the right to recoupment. But this Board is an administrative tribunal having a limited jurisdiction. Section 272 (g) of the Revenue Act of 1934 specifically provides that it "shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid", though it may consider such facts with relation to the taxes for other taxable years when it is necessary to do so to correctly redetermine the amount of the deficiency. (*Marie Pederson*, 14 B. T. A. 1089; *Lowe & Campbell Athletic Goods Co.*, 18 B. T. A. 1134; *Greenleaf Textile Corporation*, 26 B. T. A. 737; affd., 65 Fed. (2d) 1017; *Standard Island Creek Coal Co.*, 28 B. T. A. 690; *W. M. Ritter Lumber Co.*, 30 B. T. A. 231.)

But the leeway given the Board under the above statute is not sufficient to permit us to go to the length urged by petitioner. We have no jurisdiction to determine tax liability for a year which is not before us, though we may consider other years when it is necessary for us to do so for the purpose of redetermining *the* deficiency before us. Illustrative of the application of the section under discussion is the consideration by us of a "net loss" for prior years (section 206, Revenue Act of 1926) for the purpose of ascertaining taxable income in a later year. But we have no power to require the application of an overpayment for one year to the liquidation of a tax liability for another year. (Cf. *Gould-Mersereau Co.*, 21 B. T. A. 1316; *B. T. Couch Glue Co.*, 12 B. T. A. 1321; *Robert Monro Sanderson et al., Executors*, 16 B. T. A. 1022.)

The Board's jurisdiction in connection with overpayments is prescribed in section 322 (d) of the Revenue Act of 1934, and is limited to cases in which the "Board finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency." In such cases the Board has jurisdiction to determine the amount of such overpayment, but "no such credit or refund shall be made of any portion of the tax unless the Board determines as part of its decision that it was paid within three years before the filing of the claim or the filing of the petition, whichever is earlier."

The statutory period of limitation upon refunds and credits is prescribed in section 322 (b) (1) of the Revenue Act of 1934, shown in the margin.[1]

Petitioner relies upon paragraph (b), article IV of Treasury Decision, 4168 (C. B. VII-2, p. 413), promulgated June 21, 1928, under the Trading With the Enemy Act as amended by the Settlement of War Claims Act, *supra*, which reads as follows:

If a final computation shows that the full amount of internal revenue taxes properly payable is in excess of the amount (if any) previously paid, the amount remaining unpaid shall be paid by the Alien Property Custodian to the Collector of Internal Revenue, Baltimore, or to a representative of such collector, as soon as practicable, after the final computation has been made. If the final computation shows that the full amount of internal revenue taxes properly payable is less than the amount previously paid, the difference shall be credited or refunded in accordance with the provisions of these regulations. A final computation will not prohibit a subsequent computation if it is determined that the amount shown by the final computation is erroneous.

Upon brief petitioner contends that the regulation in effect provides for a single computation to be made of the full amount of taxes due while the property was held by the Alien Property Custodian, against which should be offset the total tax paid. He asserts that the respondent can not determine a deficiency unless the amount shown to be due exceeds the full amount collected.

We have carefully examined the act, the Treasury decision, and the regulations thereunder and can not reach such conclusion. Article III (e) of the regulations, we believe, affords petitioner his remedy, but he has failed to avail himself of it. This provides that a final computation will be made by the Alien Property Custodian, and, if "the taxpayer desires to protect his right to any credit or refund determined to be due, a claim for credit or refund should be filed." Section 24 (f) of the act provides for the filing of such claims either before the expiration of the period of limitations properly applicable thereto or before the expiration of six months after the date of the enactment of the Settlement of War Claims Act of 1928, whichever date is the later. No claim for refund or credit was filed and the period within which any could have been filed has long since elapsed.

In *Bull* v. *United States*, *supra*, the Court recognizes that situations might arise wherein the sovereign would retain a tax, taken unjustly and in violation of its own statute, and in which Con-

[1] Sec. 322. (b) (1) *Period of Limitation.*—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

gressional action would be the taxpayer's sole avenue of redress. This is apparently such a situation.

While the equity of petitioner's contention appeals to us, we have no alternative but to construe the acts of Congress precisely as written. We have held that the year 1922 is not before us for any purpose, and any overpayment made for such year can not be used to reduce the deficiency for the years 1918 and 1921. It is stipulated that such deficiency is correct. It follows that it must be, and is, approved.

*Judgment will be entered for the respondent.*