## GOOCH MILLING & ELEVATOR CO. v. UNITED STATES.

### No. 47004.

Court of Claims.

Feb. 2, 1948.

F. W. McReynolds, of Washington, D. C., for plaintiff.

John W. Hussey, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen. (Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff seeks to recover an overpayment of $7,935.58 income tax for 1935 on account of certain inventory adjustments which

were made in its returns for the fiscal years ended June 30, 1935, and June 30, 1936. The principal question involved is as to the applicability of Section 820 of the Revenue Act of 1938, 52 Stat. 447, 581, Section 3801 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3801, which provides for mitigation of inequities under the income tax laws caused by the statute of limitations and other provisions which would prevent equitable adjustment and refund.

In 1938, the Commissioner of Internal Revenue made an investigation and examination of plaintiff's returns for the taxable years 1929 to 1936, inclusive, and found that the inventories used in those returns in determining the amount of plaintiff's income had been overstated for all years. It is agreed that the only inventory adjustment which the Commissioner made in the fiscal year ended June 30, 1929, and in each year thereafter to and including the fiscal year 1936, was the exclusion from the inventory of certain wheat which plaintiff had included therein but which it did not own during each of the years in this period (finding 11). There is no claim or proof that in any year the Commissioner shifted this item of the inventory, as plaintiff had reported it, from one year to another. It is expressly stipulated that this wheat item was not shifted from the year 1935 to the year 1936. In these years the Commissioner did only what he had done for other years, namely, entirely eliminated this item from the inventory for both years. The result was an overpayment for 1935 and a deficiency for 1936.

The Commissioner recomputed plaintiff's net income and tax for each of the years 1929 to 1936, using the corrected inventories, about which there is no controversy, and determined overassessments in some years and deficiencies in others. The result for the fiscal year 1929 to 1934, inclusive, was a net overassessment which was barred by the statute of limitations. For the fiscal year ended June 30, 1935, the Commissioner found and computed an overassessment of $7,935.58, and for the fiscal year ended June 30, 1936, a deficiency of $6,663.42. The overassessment for the fiscal year ended June 30, 1935, was due entirely to the inventory adjustment and the deficiency for the

fiscal year ended June 30, 1936, mainly to inventory adjustments and in part to the disallowance of processing tax imposed but not paid. The inventory adjustments for all years from 1929 to 1936, inclusive, were made by the Commissioner in a consistent manner.

At that time the statute of limitations precluded the refund of the overassessment for the fiscal year 1935, since no refund claim had been filed, but the collection of the deficiency for the fiscal year 1936 was not barred. The Commissioner gave notice on May 7, 1940, of his determination of a deficiency for the latter year.

Plaintiff appealed on August 1, 1940, to the Board of Tax Appeals [now Tax Court] from the Commissioner's determination of the deficiency for 1936, and in that petition sought to have the overpayment for 1935 offset against the deficiency for 1936. Plaintiff did not question the correctness of the Commissioner's determination of the deficiency. The Board held it had no jurisdiction to determine or to apply any overpayment of taxes for 1935 against the deficiency for 1936 and entered judgment for the deficiency for 1936 in the amount of $6,-663.42. On appeal that decision was reversed by the Circuit Court of Appeals. Gooch Milling & Elevator Co. v. Commissioner, 8 Cir., 133 F.2d 131. However, the Supreme Court reversed the Circuit Court and sustained the Board. Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139. Thereafter plaintiff paid the deficiency for 1936.

Within the time allowed by Section 820 (c), that is, one year after the decision by the Supreme Court, plaintiff filed a claim for refund for 1935 on the ground that the determined overassessment for that year should be refunded by application of the provisions of Section 820, supra. That claim was rejected March 27, 1946. In addition, plaintiff also filed an alternative claim for refund for 1936 on September 14, 1945, in the amount of $9,647.26 (tax and interest paid), on the ground that it was entitled to equitable recoupment of the overpayment, with interest, for 1935 under the decision of the Supreme Court in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695,

79 L.Ed. 1421. That claim has not been acted upon by the Commissioner.

Plaintiff's petition is likewise framed in the alternative and on this alternative point its argument is, that if it should be held that Section 820 is not applicable on the facts plaintiff should have judgment for the 1935 overpayment by way of recoupment as a credit against the amount of the 1936 deficiency and interest, since the deficiency for 1936 and the overpayment for 1935 arose out of the same inventory item or transaction. See Bull v. United States, supra, and Robert G. Elbert et ux. v. Johnson, 2 Cir., 164 F.2d 421.

Section 322(c) of the Revenue Act of 1934, 48 Stat. 680, 750, 26 U.S.C.A. Int.Rev. Code, § 322(c), in outlining the effect of petitions to the Board states in clear terms that after such a petition has been filed "no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court" except in certain instances not here material.

■ In view of the positive provisions of Section 322(c), supra, we think there can be no question that plaintiff is precluded from any recovery in respect of the tax for 1936, by way of any credit or refund. Elbert v. Johnson, supra.

Defendant concedes that under Section 820 plaintiff is entitled to have its claim for refund for 1935 considered and decided by this court.

■ This brings us to the real issue in the case, namely, whether the facts bring plaintiff within the provisions of Section 820 of the Revenue Act of 1938 and permit recovery of the determined overpayment for 1935 without regard to the fact that the general statute of limitations would bar recovery. That section was enacted to relieve both taxpayers and the Government from the effects of certain "hardship" cases where the operation of other provisions of the revenue acts ordinarily precludes correction of tax results flowing from an erroneously inconsistent position previously maintained (that is, for other years) by

either party. That section provides in subsection (b) thereof that it shall be applicable, insofar as here material—

When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer; or

"(2) Allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer; or

"(3) Requires the exclusion from gross income of an item with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year or from the gross income of a related taxpayer; or

\*　\*　\*　\*　\*　◆

"(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction—and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation (whether before, on, or after the date of enactment of this Act) of any provision of the internal-revenue-laws other than this section and other than section 3229 of the Revised Statutes, as amended (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c))or by the taxpayer with respect to whom the determination is made (in case

the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be. * * *"

The section contains a further provision as to the method of adjustment which reads as follows:

"(c) Method of Adjustment. The adjustment authorized in subsection (b) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, to be ascertained as provided in subsection (d), in the same manner as if it were a deficiency determined by the Commissioner with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year with respect to which the error was made, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year."

Under this section a method is provided by which a taxpayer may obtain a refund for the year in which the erroneous inclusion or exclusion occurred but this is not done by way of offset or recoupment against the year where the corresponding correction is made. In other words, when a determination is made with respect to some other year, a taxpayer is given one year from the date such determination becomes final within which to file a claim for refund for the year other than that which has become final, and that claim for refund is dealt with in a manner similar to any claim for refund timely filed. In the event of the allowance of such a claim for refund, the amount recovered would be for the year for which the claim was filed and would in no sense be dependent upon any credit or offset against or recoupment from the deficiency determined for another year.

In this case a deficiency was determined for 1936, and that decision became final upon affirmation of the Board's decision by the Supreme Court in 1944. Within one year thereafter plaintiff filed a claim for refund for 1935 in which it asks for a re- fund on the ground that it was entitled to the benefits of Section 820. In effect, that section lifted the bar of the statute of limitations on a refund for 1935 and set up a new period of limitations of one year within which a claim could be filed.

In these circumstances the only question is whether the inventory adjustments which gave rise to the overassessment in 1935 and primarily resulted in the deficiency for 1936, bring plaintiff within the provisions of Section 820. We are convinced that they do not. That section refers to an "item" or "items" of income or deduction which were erroneously included or excluded, and this would indicate that what the Congress had in mind were specific identifiable items of income or items of deduction which produced inequitable results through inconsistent treatment. For example, a taxpayer might include dividends as income in one year which on final determination were found applicable to a later year when the statute of limitations had run on the allowance of a refund for the earlier year. A similar situation would arise where a deduction for salaries, a loss or a bad debt, was claimed for a given year and upon audit of that return it was found that such deduction properly belonged in an earlier year, where the amount of the deduction would give rise to a barred refund. In such cases we have inequitable results caused by the shifting of specific and identifiable items from year to year which can be traced and appropriate adjustment made.

We are not here concerned with the transfer of an identifiable item or items, the effect of which can be traced from year to year, and we are unable to bring the inventory adjustments made within the language of Section 820(b). What occurred was that plaintiff had overvalued all of its inventories which it used in the preparation of its returns for the fiscal years 1929 to 1936, inclusive, by including in each return certain property which it did not own, and upon an examination of those returns at the request of plaintiff, the Commissioner simply excluded that item of property from all returns and adjusted the inventories for each year in a correct and consistent manner, which gave rise to overassessments in

some years and deficiencies in others. While it is true that inventories serve as one factor in determining gross income, they are not of themselves items of income or items of deduction. Where inventories are used for the purpose of determining the income of a business, the cost or value of the opening inventory of a given year is added to the total purchases and labor and material costs during the year and from that total is deducted the cost or value of the closing inventory in order to arrive at the cost of goods sold during the year. The amount representing the cost of goods sold is then deducted from the amount received from sales in order to arrive at gross operating profit. An overvalued opening inventory operates to reduce income whereas an overvalued closing inventory operates to show an excessive income.

In this case, as would naturally be expected, the reductions were not the same in the opening and closing inventories as the inventories fluctuated from year to year, but the only change made was the elimination of the same inventory item in each year. As a result the opening inventory for 1935 (July 1, 1934) was reduced from $319,440.77 to $130,252.29, and the closing inventory for that year (June 30, 1935) was reduced from $361,701.88 to $124,597.55. The reduction of the opening inventory in the amount of $189,188.48 ($319,440.77 minus $130,252.29) increased income in that amount, and the reduction in the closing inventory of $237,104.33 ($361,701.88 minus $124,597.55) decreased income in that amount which meant a net decrease in income of $47,915.85. In other words, the increase in income on account of the reduction of the opening inventory was more than offset by the decrease in income due to a reduction of the closing inventory. As a result an overassessment was determined for that year. In a similar manner, the Commissioner adjusted 1936 by reducing the opening inventory in the amount of $237,104.33 (which was the same reduction he made in the closing inventory for 1935) and reduced the closing inventory for 1936 in the amount of $216,098.33 ($345,017.43 less $128,919.10). Since the reduction of the opening was greater than the reduction in the closing by $21,006, an increase in income in that amount was shown, which, together with the disallowance of a deduction claimed on the return for processing taxes imposed but not paid, produced the deficiency for 1936.

In such a computation the eliminations made in 1935, which gave rise to the overassessment for 1935, undoubtedly affected the income for 1936, but it is not possible to say that any item of income or deduction produced that result and if so, to what extent. These inventories were adjusted in a consistent manner over a period of years and it might well be that adjustments which were made in inventories prior to 1935 were reflected in the adjustments which gave rise to the deficiency for 1936. We thus have a situation where consistent elimination of a particular inventory item made necessary a series of adjustments, which gave rise to the overassessment for 1935 and the deficiency for 1936. We do not have a situation involving the inclusion, allowance, or exclusion in one year of an identifiable item which was erroneously included, allowed, or excluded in another year, which the statute seems to have contemplated. In other words there was no transfer of an item from one year to another.

In the situation as presented, we cannot apply subsection 820(b), (1), (2), and (3) because we have neither identifiable items nor identifiable amounts which were included, allowed, or excluded in two years and which can be pointed to as producing an overassessment in one year and a deficiency in the other. All we know is that consistent eliminations which required adjustments of the inventories through the years produced an overassessment for 1935 and a deficiency for 1936.

Paragraph (5) of subsection (b) is not applicable to the facts in this case because that paragraph deals with "the basis of property" for the purpose of computing depletion, exhaustion, wear and tear, obsolescence, or gain or loss on the sale or exchange thereof.

In view of the foregoing we are of the opinion that the facts in this case do not bring plaintiff within any of the provisions of Section 820. The petition must accordingly be dismissed. It is so ordered.