**GOOCH MILLING & ELEVATOR CO. v.
UNITED STATES.**

No. 47004.

Court of Claims.
June 1, 1948.

F. W. McReynolds, of Washington, D. C., for plaintiff.

John W. Hussey, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen.

(Robert N. Anderson and Andrew D. Sharpe, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

By order entered May 3, 1948, plaintiff's motion for a new trial was allowed and the findings of fact, conclusion of law and opinion, filed February 2, 1948, 75 F.Supp. 474 were vacated and withdrawn.

Plaintiff sues under the provisions of Section 820 of the Revenue Act of 1938, 52 Stat. 447, 581–583, § 3801, Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 3801, to recover $7,935.58, with interest, overpayment of income tax for the fiscal year ending June 30, 1935. This overpayment, which is admitted, resulted from the erroneous valuation of inventories and the resulting computation of an excessive operating profit, by reason of the inclusion by plaintiff in its inventories of wheat and flour for 1935, of certain amounts representing the value of certain quantities of wheat (apparently on "option" or "call"), to which plaintiff did not have title during such year, and the subsequent exclusion of such amounts by defendant in May 1940, when determining and computing plaintiff's income and tax liability for the fiscal year ending June 30, 1936. At that time assessments and refunds for the fiscal year 1935 and all prior fiscal years in which the same error was made, were barred by the statute of limitation. An overpayment was computed for 1935, and a deficiency was determined and collected for 1936 by reason of adjustments in income due to the corrections and adjustments made in the inventories for these years. The determination became final in 1944 when the Supreme Court affirmed the decision of the Tax Court in a proceeding involving the deficiency for 1936. Commissioner of Internal Revenue v. Gooch Milling & Elevator Co., 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139. Within one year thereafter plaintiff filed a claim for refund of the overpayment for 1935, under Section 820, supra.

That section is a relief provision and was enacted to relieve both taxpayers and the Government from the unjust effects, in certain cases, resulting from the correction of errors where the operation of other provisions of the revenue laws ordinarily precludes correction of tax results, through refunds or credits or collection of deficiencies, flowing from an erroneously inconsistent position previously maintained (that is, for other years) by either or both parties. So far as here material, Section 820 provides, in subsection (b), that it shall be applicable—

"When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer; or

"(2) Allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer; or

"(3) Requires the exclusion from gross income of an item with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year or from the gross income of a related taxpayer; or

&ast; &ast; &ast; &ast; &ast; &ast;

"(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction—

and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation (whether before, on, or after the date of enactment of this Act) of any provision of the internal-revenue laws other than this section

and other than section 3229 of the Revised Statutes, as amended (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c)) or by the taxpayer with respect to whom the determination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c)), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be. * * *"

Subsection (c) provides for collection of deficiencies and for refunds or credits of overpayments as follows:

"(c) Method of adjustment. The adjustment authorized in subsection (b) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, to be ascertained as provided in subsection, (d), in the same manner as if it were a deficiency determined by the Commissioner with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year with respect to which the error was made, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year.

Plaintiff's return for 1935 was investigated and audited, and a deficiency of $10,854.98 was assessed and collected April 14, 1937. The return for 1936 was also audited and a deficiency of $8,912.78 was assessed and collected December 28, 1937. In these examinations and audits plaintiff's inventories and the operating profits determined and shown in connection therewith, were not changed or adjusted. Later, during 1938, a revenue agent made a further investigation and audit in connection with plaintiff's returns, and reexamined and reaudited plaintiff's books and records and

its tax returns back to July 1, 1928, the beginning of its fiscal year 1929. He found that plaintiff's inventories of wheat and flour used in the returns for the fiscal years 1929 to 1936, inclusive, for the purpose of determining the amount of taxable income, had been overvalued by reason of the erroneous inclusion in the opening and closing inventories for each year of an amount as cost or value of wheat, to which plaintiff did not have title in such year. After excluding such amounts from the cost or value of the opening and closing inventories for each year, he recomputed plaintiff's operating profit, net income and tax for each year on the basis of the corrected inventories, and, on June 3, 1939, made a report of his investigation and audit to the Commissioner of Internal Revenue. The Commissioner examined and approved the report in a final determination mailed to plaintiff on May 7, 1940, demanding payment of a further deficiency of $6,663.42 for the fiscal year 1936. This deficiency, together with interest thereon of $2,983.-84, was paid March 11, 1944, after an appeal to the Tax Court.

The stipulated facts do not show the amounts of the adjustments made in the inventories and the net income for any of the fiscal years except the fiscal years ending June 30, 1935 and 1936. It is stipulated, however, that for the fiscal years 1929 to 1934, inclusive, the overpayments resulting from the decreases in net income, by reason of the adjustments in the inventories and the taxable income, exceeded the deficiencies which were produced by the increases in net income resulting from such adjustments. In other words, there was a net overpayment of tax for this period.

Where inventories are used for the purpose of determining the income of a business, the cost or value of the opening inventory of a given year is added to the total purchases and labor and material costs during the year, and from that total is deducted the cost or value of the closing inventory, in order to arrive at the cost of goods sold during the year. The amount representing the cost of goods sold is then deducted from sales in order to arrive at gross operating profit. Such profit is an

item of gross income. An overvalued opening inventory operates to reduce gross income, whereas an overvalued closing inventory operates to increase gross income.

Likewise, where an operating profit has been computed on the basis of inventories, a reduction in the value of the opening inventory has the effect of increasing the operating profit and income for that year in the amount of such reduction, and a reduction in the value of the closing inventory has the effect of decreasing the operating profit and income for the year in the amount of the reduction.

Where a closing inventory for any taxable year is reduced, the opening inventory for the following taxable year is automatically reduced in the same amount, and, if there is no further elimination from or decrease in the inventory during such ensuing year, the operating profit and gross income are increased in the amount by which the value of the opening inventory is decreased.

It is obvious, and is admitted, that the correction and adjustment of the closing inventory for 1935 had the direct effect of increasing taxable income for 1936, and produced a deficiency for that year.

In this case, as would naturally be expected, the reductions were not the same in the opening and closing inventories for each year, as the inventories fluctuated from year to year by reason of additions thereto and sales therefrom. The only change made by the Commissioner was the elimination in each year of the erroneously included value of an inventory item of the same character, yet the elimination of the amount or value erroneously included on account of that item affected the taxable income for the year in which eliminated and also the taxable income for the following year. As will hereinafter appear, the result in this case was to shift an amount of income from 1935 to 1936.

As a result of the correction, in May 1940, of plaintiff's errors the Commissioner reduced the opening inventory for the fiscal year 1935 (July 1, 1934) from $319,440.77 to $130,252.29, and the closing inventory for that year (June 30, 1935) was reduced from $361,701.88 to $124,597.55.

The reduction of the opening inventory in the amount of $189,188.48 ($319,440.77 minus $130,252.29) increased taxable income by that amount, and the reduction of the closing inventory in the amount of $237,104.33 ($361,701.88 minus $124,597.55) decreased taxable income in that amount. The net result of this was a net decrease in taxable income of $47,915.85. In other words, the increase in income due to the reduction of the opening inventory was more than offset by the decrease in income by reason of the reduction in the closing inventory. Therefore, an overpayment resulted, and this was determined and computed in the amount of $7,935.58.

The reduction made by the Commissioner in the closing inventory for 1935 automatically decreased the opening inventory for the fiscal year 1936, and had the effect of shifting the amount of this decrease to gross income for 1936. For this fiscal year the Commissioner decreased the opening inventory in the amount of $237,104.33, and by eliminating the value of "option" wheat which plaintiff had added to the inventory during the year, reduced the closing inventory for 1936 in the amount of $216,098.33 ($345,017.43 less $128,919.10). Since the reduction in the opening inventory by the amount of the decrease carried over from 1935 was greater by $21,006 than the amount eliminated and deducted from closing inventory, an increase in taxable income in the amount of $21,006 was shown. This increase, together with the disallowance of a deduction claimed on the return for processing taxes imposed but not paid, produced the deficiency of $6,663.42 for the fiscal year 1936.

Plaintiff's claim for refund for 1935 was disallowed, and defendant says that plaintiff may not recover in this proceeding because the adjustment of inventories is not such an income adjustment as comes within any of the provisions of Section 820 of the Revenue Act of 1938. In support of this position it is insisted that in referring to "an item" of income or deduction erroneously included or excluded, Congress had in mind specific identifiable items of income or items of deduction which produce inequitable results through inconsistent treatment, occasioned by the transfer

thereof from one year to another; that the term "item" used in subsection (b), has reference only to such specific identifiable items as dividends, salaries, a profit on the sale of specific property, a loss or bad debt.

■■ We think, upon further consideration, that the section should not be given such a limited interpretation. The term "item" was not defined or limited by Congress, and in our opinion it should be interpreted to include any item or amount which affects gross income in more than one year,[1] and produces, as a result, double taxation, double deduction or inequitable avoidance of tax. While it is true that inventories are not of themselves items of income or deduction, they are vital in the determination of gross income, and when their cost or value, as disclosed in a return, is changed, gross income is, as we have pointed out above, directly affected and the result and amount by which income is affected and the amount in which it is increased or decreased, through an increase or decrease in the operating profit or loss, is as specific and identifiable as an item or dividends, salaries, loss or the like. We think Congress was concerned with results rather than with a particular class of items. Otherwise, as the facts in this case show, the relief which it apparently intended to provide would be incomplete. It is clear that the statute was intended, first, to prevent double taxation; secondly, to prevent double deductions or credits, and, third, to prevent income from escaping taxation, by reason of the correction of errors with respect to the treatment of an item or items which enter into and affect the proper determination and computation of gross income. Inventories are clearly within that class of items. There was double taxation in this case. An amount of operating profit, arrived at by the use of the inventories,

was taxed in 1935 and, as we have shown, the reduction of the closing inventory for that year and the opening inventory for 1936, had the effect, from a tax standpoint, of shifting a part of this operating profit to the fiscal year 1936, where it was again taxed to the extent of $21,006.

■■ As we have said, Section 820 is a relief provision and, therefore, it should, if necessary, be given a liberal interpretation in order fully to carry out its apparent purpose. It would appear, from the nature of the evils intended to be remedied, that Congress was primarily concerned with the tax results when it used the language found in subsection (b) (1) to (5). It is our opinion that in the enactment of Section 820, Congress had in mind and intended to provide a fair and workable formula under which taxpayers and the Government would be given relief from the unfair and unjust results occasioned by corrections, by final determinations, of errors of either the taxpayer or the Commissioner of Internal Revenue, or both, in connection with proper treatment of items affecting taxable income and tax liability in more than one year.

The Commissioner acted inconsistently. In his determination of May 7, 1940, with respect to the fiscal year 1936, the Commissioner adopted a position which was inconsistent with the position the taxpayer had maintained with respect to the erroneous inclusion of "option wheat" in its inventories, and which determination was also inconsistent with the basis on which the Commissioner had audited and closed the plaintiff's returns for years prior to the fiscal years 1935 and 1936. Cf. Swift Manufacturing Co. v. United States, 12 F. Supp. 453, 81 Ct.Cl. 932, 936. When the determination made in May 1940 became final, "the correction of the effect of the error," made in years prior to the fiscal

---

[1] See, Maguire, Surrey, and Traynor, "Section 820, Revenue Act of 1938," 48 Yale Law Journal, 509, in which it is said, at p. 752, that "The term 'item' thus refers in a qualitative sense to the various matters which make up gross income." It is further stated, in the same article, at p. 735, that "The inconsistency of the position is ascertained by reference to what was actually done in the earlier year rather than what the taxpayer or the Commissioner may have urged at that time."

The tax result reached and a final determination under (a) (1) (B) or the disposition of a claim for refund under (a) (1) (C) constitutes both a determination that has become final and the maintenance of the inconsistent position contemplated by Section 820(b).

year 1936, was prevented by the operation of the provisions of the statute of limitations.

For the reasons stated, we hold that plaintiff's claim comes within the provisions of Section 820(b) (1), and that under the provisions of subsection (c) thereof it is entitled to recover the overpayment of $7,-935.58 for the fiscal year 1935, with interest thereon at six percent per annum from April 14, 1937, the date on which it paid a deficiency for 1935 in the amount of $10,-854.98.

In view of the above conclusion it is not necessary to discuss plaintiff's alternative claim of equitable recoupment of the 1935 overpayment against the deficiency in tax and interest assessed for 1936, under the decision in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, further than to say that in our opinion such claim is not well-founded in view of the facts and the provisions of Section 322(c) of the Revenue Act of 1934, 48 Stat. 680, 750, 26 U.S.C.A.Int.Rev.Code, § 322(c).

Judgment will be entered in favor of plaintiff for $7,935.58, with interest as provided by law. It is so ordered.