**KNOWLES ELECTRONICS, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 15499.

United States Court of Appeals
Seventh Circuit.

June 24, 1966.

Rehearing Denied Aug. 29, 1966.

Don S. Harnack, Warren C. Seieroe, John S. Pennell, James M. Roche, and McDermott, Will & Emery, Chicago, Ill., for appellant.

Richard M. Roberts, Asst. Atty. Gen., Martin T. Goldblum, Atty., U. S. Dept. of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Richard J. Heiman, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and BEAMER, District Judge.

HASTINGS, Chief Judge.

Appellant, Knowles Electronics, Inc., brought this action in the district court for a refund of taxes alleged to have been erroneously and illegally assessed and collected. The Government, prior to answer, filed a motion to dismiss under Rule 12(b) (6), Federal Rules of Civil Procedure, 28 U.S.C.A., for failure to state a claim upon which relief could be granted. After consideration, the district court entered an order, without opinion, dismissing Knowles' complaint on the ground that it was barred by the applicable statutes of limitation,[1] which had not been affected by the statute of limitations mitigation provisions of §§ 1311–1315 of the Internal Revenue Code of 1954.

On appeal, Knowles contends that the facts alleged in its complaint state a cause of action not barred by the statutes of limitation because of the mitigation provisions of §§ 1311–1315.

Briefly stated, the facts are as follows. In its fiscal year 1955, Knowles

---

1. "(a) *Period of limitation on filing claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid. * * *." § 6511, Internal Revenue Code of 1954, as amended by § 82(a), Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606.

"No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary or his delegate renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." § 6532(a) (1), Internal Revenue Code of 1954.

Section 7422(a) provides that no suit shall be brought until a claim for refund has been duly filed.

engaged in a "Livingstone" transaction, a device used to reduce taxes by claiming deductions for alleged payment of interest on loans financing the purchase of government securities. The Livingstone transaction, which this circuit has discussed in Dooley v. C.I.R., 7 Cir., 332 F.2d 463 (1964); Lewis v. C.I.R., 7 Cir., 328 F.2d 634 (1964); and Rubin v. United States, 304 F.2d 766 (1962), is in substance a sham transaction lacking commercial reality, the only purpose and effect of which is to reduce taxes. Tax deductions claimed on account of such transactions have not been allowed. See Dooley, Lewis, and Rubin, supra.

In this particular case, Knowles, in its fiscal year 1955, "purchased" $4,200,000 face value 2½ per cent U. S. Treasury bonds from M. Eli Livingstone & Co. for a promissory note payable to Corporate Finance & Loan Corp. in the amount of $4,037,250. Finance received the bonds from Livingstone against purported payment to Livingstone of $4,037,250. Livingstone received $10,500 as consideration for an irrevocable offer to buy back the Treasury Bonds on May 15, 1956 at a price of 99⅝. Knowles prepaid Finance $151,396.88 as interest on its promissory note.

In May of 1956, Livingstone "purchased" back the bonds for $4,184,250, satisfied Knowles' promissory note, and paid the remaining $147,000 to Knowles.

Over the whole transaction, Knowles paid out or lost approximately $15,000, but was able to claim on its tax return for fiscal 1955 a deduction of $151,396.88 with respect to the prepaid interest and, on its return for fiscal 1956, to report a capital gain of $136,500.

In April, 1959, the Commissioner of Internal Revenue disallowed the deduction for fiscal 1955. On July 20, 1955, Knowles filed a petition with the Tax

Court contesting, *inter alia*, the disallowance. On or prior to September 26, 1962, Knowles and the Commissioner filed a stipulation with the Tax Court that Knowles was not entitled to an interest deduction with respect to the prepaid interest. On September 26, 1962, the Tax Court entered a decision and order, Docket No. 81971, determining a deficiency for Knowles for fiscal 1955 in the amount of $78,726.38.

On January 16, 1963, Knowles filed a claim for a tax refund of $34,125, the amount of capital gains tax paid for fiscal 1956 attributable to the $136,500 Knowles "realized" in the disposition of the Treasury bonds. Knowles, in effect, based its claim on the ground that since the whole Livingston transaction was in effect a nullity, and since, for taxation purposes, the whole transaction should have been taken into account, it had made an error in reporting the $136,500 as a capital gain. Since the statute of limitations had run on fiscal 1956, Knowles relied on the statute of limitations mitigation provisions of §§ 1311–1315 of the Code.

Knowles' refund claim was disallowed on the ground that the Tax Court decision and order did not constitute a determination of deficiency within § 1313(a) and, alternatively, if it did constitute a determination, it was not a determination described in any of the subparagraphs of § 1312.

The essential problem before us is to determine whether Knowles' "error" is an error under the particular circumstances set forth in detail in § 1312. Specifically, Knowles argues that the circumstances of adjustment specified in § 1312(4) is applicable to the facts of this case.

Sections 1311 and 1312 of the Code, which are relevant here and which are set out in the margin,[2] were considered by

2. SEC. 1311. Correction of error.
 (a) *General Rule.*—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the

error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an

adjustment made in the amount and in the manner specified in section 1314.

(b) *Conditions necessary for adjustment.—*

(1) *Maintenance of an inconsistent position.—*Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, or

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case described .in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

(2) *Correction not barred at time of erroneous action.—*

(A) *Determination described in section 1312(3) (B).—*In the case of a determination described in section 1312 (3) (B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312(3) (B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

(B) *Determination described in section 1312(4).—*In the case of a determination described in section 1312 (4) (relating to disallowance of certain deductions and credits), adjustment shall be made under this part only if credit or refund of the overpayment attributable to the deduction or credit described in such section which should have been allowed to the taxpayer or related taxpayer was not barred, by any law or rule of law, at the time the taxpayer first maintained before the Secretary or his delegate or before the Tax Court of the United States, in writing, that he was entitled to such deduction or credit for the taxable year to which the determination relates.

(3) *Existence of relationship.—*In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency (except for cases described in section 1312(3) (B)), the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Tax Court of the United States for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination.

(26 U.S.C.1958 ed., Sec. 1311.)

SEC. 1312 [as amended by Sec. 59(a), Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606].

Circumstances of adjustment.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

(1) *Double inclusion of an item of gross income.—*The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

(2) *Double allowance of a deduction or credit.—*The determination allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer.

(3) *Double exclusion of an item of gross income.—*

(A) *Items included in income.—* The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; or

(B) *Items not included in income.* —The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the

this court in Olin Mathieson Chemical Corp. v. United States, 7 Cir., 265 F.2d 293 (1959). There, at 296, we stated:

"Of course, Congress did not intend by §§ 1311–1315 to provide relief for inequities in all situations in which just claims are precluded by statutes of limitations. This is no more than a truism. Statutes of limitations are an indispensable element of practical tax administration, and both hardships to taxpayers and losses of revenue may and do result from their application in the field of taxation. 'Such periods [of limitations] are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary.' Kavanagh v. Noble, 1947, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150; Rahr Malting Co. v. United States, 7 Cir., 1958, 260 F.2d 309, 312.

"In order to obtain relief under §§ 1311–1315 taxpayer must demonstrate that it meets the specific requirements of those sections. Sections 1311–1315, though complicated and technical in their wording, have the clear purpose

taxpayer for another taxable year or in the gross income of a related taxpayer.

(4) *Double disallowance of a deduction or credit.*—The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year, or to a related taxpayer.

(5) *Correlative deductions and inclusions for trusts or estates and legatees, beneficiaries, or heirs.*—The determination allows or disallows any of the additional deductions allowable in computing the taxable income of estates or trusts, or requires or denies any of the inclusions in the computation of taxable income of beneficiaries, heirs, or legatees, specified in subparts A to E, inclusive (secs. 641 and following, relating to estates, trusts, and beneficiaries) of part I of subchapter J of this chapter, or corresponding provisions of prior internal revenue laws, and the correlative inclusion or deduction, as the case may be, has been erroneously excluded, omitted, or included, or disallowed, omitted, or allowed, as the case may be, in respect of the related taxpayer.

(6) *Correlative deductions and credits for certain related corporations.*—The determination allows or disallows a deduction (including a credit) in computing the taxable income (or, as the case may be, net income, normal tax net income, or surtax net income) of a corporation, and a correlative deduction or credit has been erroneously allowed, omitted, or disallowed, as the case may be, in respect of a related taxpayer described in section 1313(c) (7).

(7) *Basis of property after erroneous treatment of a prior transaction.*—

(A) *General rule.*—The determination determines the basis of property, and in respect of any transaction on which such basis depends, or in respect of any transaction which was erroneously treated as affecting such basis, there occurred, with respect to a taxpayer described in subparagraph (B) of this paragraph, any of the errors described in subparagraph (C) of this paragraph.

(B) *Taxpayers with respect to whom the erroneous treatment occurred.*—The taxpayer with respect to whom the erroneous treatment occurred must be—

(i) the taxpayer with respect to whom the determination is made,

(ii) a taxpayer who acquired title to the property in the transaction and from whom, mediately, or immediately, the taxpayer with respect to whom the determination is made derived title, or

(iii) a taxpayer who had title to the property at the time of the transaction and from whom, mediately or immediately, the taxpayer with respect to whom the determination is made derived title, if the basis of the property in the hands of the taxpayer with respect to whom the determination is made is determined under section 1015(a) (relating to the basis of property acquired by gift).

(C) *Prior erroneous treatment.*—With respect to a taxpayer described in subparagraph (B) of this paragraph—

(i) there was an erroneous inclusion in, or omission from, gross income,

(ii) there was an erroneous recognition, or non-recognition, of gain or loss, or

(iii) there was an erroneous deduction of an item properly chargeable to capital account or an erroneous charge to capital account of an item properly deductible.

of providing for adjustments to correct errors *only* under particular circumstances set forth in detail in Section 1312, which adjustments would otherwise not be made due to the 'operation of any law or rule of law.' Section 1311(a). Moreover, these adjustments are to be allowed only under conditions delineated in Section 1311(b)."

The purpose of the mitigation provisions has been stated to be:

"to provide a fair and workable formula under which taxpayers and the Government would be given relief from the unfair and unjust results occasioned by corrections, by final determinations, of errors of either the taxpayer or the Commissioner of Internal Revenue, or both, in connection with proper treatment of items affecting taxable income and tax liability in more than one year." United States v. Rosenberger, 8 Cir., 235 F.2d 69, 73 (1956), quoting Gooch Milling & Elevator Co. v. United States, 78 F.Supp. 94, 100, 111 Ct.Cl. 576 (1948).

Under the facts, the particular inequity which Knowles has suffered is a result of its own mistake, originally caused by its engaging in a simulated commercial transaction. To describe such transactions, we have in the past quoted the statement of the Tax Court in MacRae v. Commissioner, 34 T.C. 20, aff'd, MacRae v. C.I.R., 9 Cir., 294 F.2d 56 (1961):

"The steps taken, each in itself a legitimate commercial operation, were here each mirror images, and add up to zero. The various purchases and sales, each real *without the other*, neutralize one another and fairly shout to the world the essential nullity of what was done. No purchase and no sale is essentially identical with what was done here, i. e., identical and virtually simultaneous purchases and sales. The choice of the more complicated and involved method of doing nothing had no purpose, save the erection of the facade upon which petitioners now seek to rely." Quoted in Rubin, supra, 304 F.2d at 770.

While Knowles does not seek to rely upon the facade of the Livingstone transaction in which it engaged, and agrees that the transaction was a nullity, we point out that notwithstanding the fact that the transaction was admittedly hollow, a legal and commercial nullity may yet have legal consequences.

 We have often leveled a skeptical eye at Livingstone transactions, and we do not perceive that such a transaction, reported on a tax return according to plan, having as its sole purpose the circumventing of taxation, involves the kinds of error §§ 1311–1315 were intended to alleviate. Indeed, it is almost euphemistic to refer to the reporting of the steps involved in the carefully calculated hollow circularity of Livingstone transactions as errors.

The true character of Livingstone transactions for tax purposes was resolved in a series of decisions handed down between 1959 and 1964.[3] In a sense Knowles may have been "caught" unawares in failing to make a claim for refund for fiscal 1956 because it was not notified of its 1955 deficiency until April, 1959, within a few months of the running of the § 6511 three year statute of limitations on its claims for refunds for its fiscal 1956. Nonetheless, while Livingstone transactions had not been adjudicated for what they are, no one participating in such a transaction could fail to see that it had no investment or commercial meaning and that, instead, it was clearly and solely a tax escape device.

---

3. Dooley v. C.I.R., 7 Cir., 332 F.2d 463 (1964); Gheen v. C.I.R., 6 Cir., 331 F.2d 470 (1964); Lewis v. C.I.R., 328 F.2d 634 (1964); Bridges v. C.I.R., 4 Cir., 325 F.2d 180 (1963); Rubin v. United States, 7 Cir., 304 F.2d 766 (1962); MacRae v. C.I.R., 9 Cir., 294 F.2d 56 (1961); Becker v. C.I.R., 2 Cir., 277 F.2d 146 (1960); Lynch v. C.I.R., 2 Cir, 273 F.2d 867 (1959); Sonnabend v. Commissioner of Internal Revenue, 1 Cir., 267 F.2d 319 (1959); Goodstein v. C.I.R., 1 Cir., 267 F.2d 127 (1959).

■■ Comparing the manner of reporting the transaction involved in this case with the manner in which it should have been reported, it is plain that Knowles has been doubly taxed. As we remarked in Olin, supra, however, the mitigation provisions were not designed to correct every inequity of double taxation. We cannot conceive Congress intended by such provisions that the United States should bear the risk involved in Livingstone transactions. The party seeking the benefit of §§ 1311–1315 of the Code is required to establish clearly the applicability of the specific statutory requirements to its situation. Olin, supra, 265 F.2d at 296; C. I. R. v. Goldstein's Estate, 2 Cir., 340 F.2d 24, 27 (1965); United States v. Rigdon, 9 Cir., 323 F.2d 446, 449 (1963); Taxeraas v. United States, 8 Cir., 269 F.2d 283, 289 (1959). Knowles has not done so.

For the foregoing reasons, we hold that the claim for refund asserted in the taxpayer's complaint was barred by the applicable statutes of limitation.

The judgment appealed from is affirmed.

Affirmed.