VANDENBERGE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 11075.

Circuit Court of Appeals. Fifth Circuit.

Feb. 12, 1945.

J. V. Vandenberge, Jr., of Victoria, Tex., for petitioners.

Harold C. Wilkenfeld, Sewall Key, Helen R. Carloss, and Eugene E. Beyer, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, and B. D. Daniels, Sp. Atty., Bur. of Int. Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

This case, involving income and excess profits taxes for the years 1938 and 1939, presents two questions arising from the sale of improved real estate owned by the Texas Auto Company and the subsequent liquidation of the company by the transfer of its assets to its shareholders: (1) What was the unadjusted basis of the property for determining gain or loss under Section 113 (a) of the Revenue Act of 1938, 26 U.S.

C.A. Int.Rev.Acts, page 1048? (2) Were the transferees of the company entitled to offset individual income tax overpayments against their tax liabilities as transferees?

In 1922 the Texas Auto Company purchased certain improved real estate. As consideration for the transfer the company paid notes aggregating $20,000 that were secured by liens on the property, and in addition secured the cancellation and return to the seller of unsecured notes aggregating $24,567.16, liabilities of the seller and his business associates, held by the City National Bank of Corpus Christi, Texas. No consideration was paid to the bank for the surrender of these notes, and in its tax returns for 1922 it charged off the amount thereof; no part of the loss has since been recouped by the bank.

The company, ascribing an acquisition cost of $45,000 to the property, allocated $25,000 to the cost of the improvements for depreciation purposes. On this basis it claimed and was allowed depreciation aggregating $16,417.30 in its tax returns for the years 1923 to 1937, inclusive. It claimed depreciation in the sum of $1400 in 1938, and in 1939 it sold the property for $36,000. Both the depreciation deduction claimed in 1938 and· the gain reported on the sale in 1939 were computed by the taxpayer on the theory that the six notes which were cancelled and returned increased the acquisition cost of the property by the aggregate of their face value. The· Commissioner ruled that the amount of the notes should not be recognized as a part of the cost of the property; that the unadjusted basis of the property in the hands of the taxpayer was $20,000 rather than $44,567.16; that, using the allocation percentage adopted by the taxpayer, the land cost $8,888.89 and the improvements cost $11,111.11; that the improvements had been fully. depreciated by deductions aggregating $16,417.30 prior to the allowance claimed for 1938; and that the taxable gain resulting from the sale in 1939 was the selling price, $36,000, less the cost of the land, $8,888.89, or $27,111.11. The dispute upon the issue of liability therefore turns upon a determination of the unadjusted basis of the property in the hands of the taxpayer.

■ Section 113(a) of the Revenue Act of 1938 provides that the unadjusted basis of property shall be the cost of such property. The solution to the question raised is as simple and clear as the language of the pivotal statute. The cost of the property was the price paid to acquire it. The only consideration paid by the purchaser was $20,000, and no other consideration passing anything of value moved to the seller from any one else. The notes surrendered to the seller by the bank were found by the Tax Court to be utterly valueless. That finding being based upon the action of the bank in charging off the indebtedness, the further fact that no payment ever was made thereon prior to the surrender of the notes, and the absence of any evidence to the contrary, must be accepted by this court. The decision of the Tax Court sustaining the deficiency assessments must be sustained.

■ Since the company did not discharge in full its tax indebtedness, but transferred its assets through liquidating dividends to its shareholders, those transferees became liable for the deficiency assessments. They, having paid individual income taxes upon the whole of the liquidating dividends each received, and being obliged to disgorge such part of those dividends as might be required to pay the deficiency assessments, claimed the right to offset against their transferee-liability to the extent that their dividends would be decreased to satisfy the deficiencies.

■ The Tax Court declined to allow the set-off on the ground that it had no general equity powers and had no jurisdiction to grant equitable recoupment. Petitioners now concede that this ruling of the Tax Court was correct,[1] but they insist that this court has the power to grant such relief. The powers of this court, upon review of decisions of the Tax Court, are those conferred by 26 U.S.C.A. Int.Rev.Code, § 1141(c). If the decision of the Tax Court were not in accordance with law, this court could modify or reverse the decision as justice might require. Since the decision under review is in accordance with law, we have only power to affirm. In no event does the statute empower this court, upon review of decisions of the Tax Court, to grant relief of a character wholly beyond the power of the Tax Court.

Affirmed.

---

[1] Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 64 S.Ct. 184.