ESTATE OF MABEL C. VAN WINKLE, DECEASED, ROBERT VAN WINKLE, COEXECUTOR AND THOMAS SHERWOOD VAN WINKLE, COEXECUTOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4467–67. Filed March 19, 1969.

*Harold Kamens* and *Leonard M. Atlas*, for the petitioners.
*William M. Gross*, for the respondent.

OPINION

DAWSON, *Judge:* Respondent determined a deficiency in the estate tax of petitioners in the amount of $8,254.98.

The issues for decision are:

(1) Whether the value of a power of appointment over the corpus of a trust created under the will of Stirling Van Winkle, deceased, should be included in the gross estate of Mabel C. Van Winkle, deceased.

(2) Whether petitioners are entitled to a credit for prior estate tax paid on property which passed to Mabel C. Van Winkle from the Estate of Stirling Van Winkle.

(3) Whether the doctrine of equitable recoupment will allow petitioners to set off any part of the estate tax paid by the Estate of Stirling Van Winkle against the deficiency determined by respondent in this case.

All of the facts have been stipulated and are found accordingly. The pertinent facts are set out below.

Petitioners are the executors of the Estate of Mabel Van Winkle, deceased, who died on October 7, 1963. At all times material hereto and at the time the petition was filed herein, the legal residences of the executors, Robert Van Winkle and Thomas Sherwood Van Winkle, were Rutherford, N.J., and Weston, Conn., respectively. The decedent's estate was administered under the jurisdiction of the Surrogate's Court of Bergen County, N.J.

The decedent's husband, Stirling Van Winkle, died testate on December 1, 1951. His will created a power of appointment in Mabel over a specific portion of a residuary trust. Paragraph Sixth in his will reads, in part, as follows:

SIXTH: All the rest, residue, and remainder of my estate, real, personal, or mixed, including any power of appointment that I may have or acquire, and wheresoever situated, I give, devise, and bequeath to my trustees or trustee here-in-after named in trust for the following uses and purposes, viz:-

(a) To pay the net income, monthly, from said trust estate unto my said wife, Mabel C. Van Winkle, for and during the term of her natural life.

(b) If, for any reason, my said wife is unable to care for herself or becomes mentally or physically deficient or handicapped, I authorize and empower my trustees or trustee to use the income and as much of the principal of the trust estate as may be advisable in the judgment of my trustees or trustee, for her support, maintenance, and care. Further, in the event that the income from my trust estate has shrunk or should decrease materially, or living expenses or costs increase substantially, I authorize my trustees or trustee to make payments from the principal of my trust estate, if, in the judgment of my said trustees or trustee, it becomes advisable to do so for the benefit of my said wife; and in so doing my trustees or trustee need not account to any remainderman.

(c) Upon the death of my wife, Mabel C. Van Winkle, I direct my trustees or trustee to pay over to my children, William S. Van Winkle, Robert Van Winkle, and Thomas S. Van Winkle, in equal shares, one half of all that may remain of the principal of the trust, together with one half of the accumulations of income, if any, and one half of the accrued income, if any. The other remaining one half of all that may remain of the principal of the trust, together with one half of the accumulations of income, if any, and one half of the accrued income, if any, I direct to be paid to whomsoever my wife may direct it to be paid to in accordance with her last will and testament. However, in the event my wife fails to exercise her power to dispose of this one half of the trust estate, then and in that event alone, such one half of the trust estate together with the accumulations of income, if any, and accrued income shall be paid in equal shares to my children, William S. Van Winkle, Robert Van Winkle, and Thomas S. Van Winkle, or disposed of in the same manner as the other half of the trust estate as per articles 6 d, e, or f.

The power of appointment was not included as an asset in Mabel's estate tax return.

The executors of both Mabel's estate and Stirling's estate were their sons, Robert and Thomas.

The estate tax return filed for Stirling's estate was examined by respondent's agents. On January 12, 1956, an Estate Tax Waiver of Restrictions on Assessment and Collection of Deficiency (T.D. Form 890) was signed by the coexecutors.

The deficiency in estate tax in Stirling's estate was based in part on the disallowance of the marital deduction claimed for the trust assets subject to the power of appointment created in Stirling's will. The marital deduction claimed in Stirling's estate tax return, the

marital deduction allowed, and the marital deduction disallowed were as follows:

Marital deduction claimed_____ $65, 385. 06
Marital deduction allowed_____ 32, 813. 70

Marital deduction disallowed_____ 32, 571. 36

On March 17, 1967, the executors of Stirling's estate filed a claim for refund seeking to recover the deficiency resulting from the marital deduction which was disallowed in Stirling's estate. The claim for refund was disallowed by respondent on the ground that it was not timely filed pursuant to the relief provisions of the Technical Amendments Act of 1958, sec. 93(b), Pub. L. 85–866.

The notice of deficiency herein, dated June 7, 1967, included the amount of $50,250 in Mabel's gross estate with the following explanation of the adjustment:

It has been determined that the General Power of Appointment over one-half (½) of the corpus and income accrued and accumulated in the residuary trust created under the Last Will and Testament of Stirling Van Winkle, date of death December 1, 1951, is includable in the gross estate of Mabel C. Van Winkle, date of death October 7, 1963, in accordance with section 2041 of the Internal Revenue Code.

The decedent died owning a general power of appointment over one-half of the corpus and accumulated income of a trust created under the will of her deceased husband. It is clear that this power of appointment is includable in her gross estate for estate tax purposes under the provisions of section 2041(a)(2),[1] I.R.C. 1954. It is equally clear that the power created under Stirling's will falls within the definition of the powers specified in the statute and does not fall within any of the exceptions created under section 2041(b)(1). The courts have consistently held that a general power of appointment which could be exercised by will is includable in the gross estate for

_____
[1] SEC. 2041. POWERS OF APPOINTMENT.
(a) IN GENERAL.—The value of the gross estate shall include the value of all property—
* * * * * * *
(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

estate tax purposes. See *Ewing* v. *Roundtree*, 346 F. 2d 471 (C.A. 6, 1965) ; *Estate of Rebecca Edelman*, 38 T.C. 972, 975 (1962).

The first argument made by petitioners is that the identical asset should not be taxed in two consecutive estates when the intention of Congress is to have such asset taxed only in one estate. What happened here is that the executors of Stirling's estate, who are also the petitioners in this case, claimed as part of the marital deduction the value of one-half of the residue. In auditing the estate tax return filed in Stirling's estate, the Commissioner disallowed part of the marital deduction in accordance with the provisions of section 812 (e) (1) (F), I.R.C. 1939. The executors signed a waiver of restrictions on assessment and collection, and the resulting deficiency was assessed and paid.

Section 93 (a) of the Technical Amendments Act of 1958 amended section 812 (e) (1) (F) to allow a power of appointment similar to the one in Stirling's estate to qualify for the marital deduction. Section 93 (b) of the act further amended section 6511 (b), I.R.C. 1954, to permit the filing of a claim for refund for any overpayment resulting from the application of the amendment within 1 year from the date of its enactment. The Technical Amendments Act of 1958 was enacted on September 2, 1958, and the 1-year grace period allowed for the filing of refund claims resulting from the application of the amendment expired on September 3, 1959. Petitioners did not file a refund claim, as authorized by the amending act, until March 17, 1967.

Petitioners ignore the 1-year statutory relief period provided in section 93 (b) and, in effect, contend that the intent of Congress was a permanent suspension of the statute of limitations. As pointed out by the Supreme Court in *Rothensies* v. *Electric Battery Co.*, 329 U.S. 296, 301 (1946) :

> It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as practical administration of an income tax policy.

Therefore, we reject the petitioners' first argument.[2]

---

[2] Petitioners' contention that the value of the power of appointment cannot, as a matter of fact and law, be taxed in this decedent's estate because the trust corpus was previously taxed in Stirling's estate is untenable. *Starrett* v. *Commissioner*, 223 F. 2d 163 (C.A. 1, 1955), affirming 22 T.C. 402 (1954).

The second argument advanced by petitioners is that this Court, pursuant to section 272(g) of the 1939 Code and section 6214(b)[3] of the 1954 Code, has authority to review the facts of other tax returns for the purpose of allowing it to make a correct determination of the deficiency asserted in this case. One obstacle in the path of petitioners' position on this point is the fact that the disallowance of part of the marital deduction in Stirling's estate was in accord with existing law at that time. A second obstacle is that this Court lacks jurisdiction to determine an overpayment in a prior year for which no deficiency has been determined.

The third argument of petitioners is that respondent is estopped from including the value of the power of appointment as an asset in the decedent's gross estate where it has already been taxed in the husband's estate. They ask this Court "to administer the tax laws consistently and fairly" and "to estop the Commissioner from maintaining an inconsistent position." The fact that petitioners failed to file a timely claim for refund in Stirling's estate does not render respondent's position inconsistent. And the statement of the Supreme Court in *Rothensies* v. *Electric Battery Co., supra*, plainly indicates that "fairness" requires strict adherence to the statute of limitations. Moreover, the only relief Congress has seen fit to incorporate in the Internal Revenue Code with respect to the taxation of property in successive estates is found in section 2013(a) of the 1954 Code which allows a credit against estate tax, up to the amount of the tax on the property in a prior estate, provided the prior decedent died not more than 10 years before the present decedent. Since Stirling predeceased Mabel by more than 10 years, no credit is available to Mabel's estate as a result of prior transfers.

Finally, petitioners contend that they should be permitted to set off part of the tax assessed against Stirling's estate against the deficiency asserted herein. They rely upon *Bull* v. *United States*, 295 U.S. 247 (1935), which expounds the doctrine of equitable recoupment. They acknowledge that rule of the *Bull* case has been limited in application to the relief of the identical taxpayer, but urge us to extend the rule to apply to the identical asset.

The Supreme Court has already decided the question as to whether the Tax Court has jurisdiction to consider application of the doctrine of equitable recoupment. It specifically held that the remedy is available to taxpayers only in the United States District Courts. *Rothensies*

---

[3] SEC. 6214(b). JURISDICTION OVER OTHER YEARS.—The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year shall consider such facts with relation to the taxes for other years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid.

v. *Electric Battery Co., supra.* See also *Commissioner* v. *Gooch Co.,* 320 U.S. 418 (1943), where the Supreme Court reasoned that to allow such an offset would necessarily involve the determination by this Court of an overpayment in a prior year which was not before us and for which no deficiency had been determined. The Court commented on pages 420–422 as follows:

> The Board's want of jurisdiction to apply the doctrine of equitable recoupment in this case is manifest from these statutory provisions. * * * The absolute and unequivocal language of the proviso of § 272 (g), however, placed such a determination outside the jurisdiction of the Board. Thus to allow the Board to give effect to an equitable defense which of necessity is based upon a determination foreign to the Board's jurisdiction would be contrary to the expressed will of Congress.
>
> \* \* \* \* \* \* \*
>
> Until Congress deems its advisable to allow the Board to determine the overpayment or underpayment in any taxable year other than the one for which a deficiency has been assessed, the Board must remain impotent when the plea of equitable recoupment is based upon an overpayment or underpayment in such other year. The judgment of the court below is therefore reversed and that of the Board of Tax Appeals is affirmed.

Therefore, this Court cannot consider and apply the doctrine of equitable recoupment.

Accordingly, we sustain respondent's determination. But to allow petitioners to claim additional administrative expenses for legal fees incurred in connection with this litigation,

*Decision will be entered under Rule 50.*