ESTATE OF BESSIE I. MUELLER, DECEASED, JOHN S. MUELLER PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2733–90.     Filed December 13, 1993.

*Stevan Uzelac, Michael A. Indenbaum*, and *Paul L. Winter*, for petitioner.

*Thomas M. Rath*, for respondent.

OPINION

BEGHE, *Judge*: In *Estate of Mueller v. Commissioner*, T.C. Memo. 1992-284, we redetermined the increased value of the shares of Mueller Co. included in decedent's gross estate. We now consider respondent's motion to dismiss for lack of jurisdiction the partial affirmative defense of equitable recoupment asserted in petitioner's amended petition in respect of a time-barred overpayment of income tax by petitioner's residuary legatee, the Bessie I. Mueller Trust (the trust). For the reasons discussed below, we deny respondent's motion to dismiss.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The ancient doctrine of equitable recoupment, which developed concurrently at common law and in equity, was judicially created to preclude unjust enrichment of a party to

a lawsuit and to avoid wasteful multiplicity of litigation. See generally McConnell, "The Doctrine of Recoupment in Federal Taxation", 28 Va. L. Rev. 577, 579-581 (1942). The doctrine has been applied in Federal tax matters since the Supreme Court's decision in *Bull v. United States*, 295 U.S. 247 (1935), to allow the bar of the expired statutory limitation period to be overcome in limited circumstances in order to prevent inequitable windfalls to either taxpayers or the Government that would otherwise result from inconsistent tax treatment of a single transaction, item, or event affecting the same taxpayer or a sufficiently related taxpayer. See also *United States v. Dalm*, 494 U.S. 596, 605-606 n.5 (1990); *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296 (1946); *Stone v. White*, 301 U.S. 532 (1937). The doctrine of equitable recoupment may be applied to relieve inequities caused when a transaction is treated inconsistently under different taxes, such as the income tax and the estate tax. *Bull v. United States, supra*; *Boyle v. United States*, 355 F.2d 233 (3d Cir. 1965). However, the party asserting equitable recoupment may not affirmatively collect the time-barred underpayment or overpayment of tax. Equitable recoupment "operates only to reduce a taxpayer's timely claim for a refund or to reduce the government's timely claim of deficiency". *O'Brien v. United States*, 766 F.2d 1038, 1049 (7th Cir. 1985).

Respondent argues that we are precluded from applying the doctrine of equitable recoupment because there is no provision in the Internal Revenue Code that grants the Tax Court jurisdiction to apply equitable recoupment, and that sections 6214(b)[1] and 6512(b),[2] and their statutory prede-

---

[1] Sec. 6214(b) provides:

SEC. 6214(b). JURISDICTION OVER OTHER YEARS AND QUARTERS.—The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.

[2] Sec. 6512(b)(1) provides that if the Tax Court

finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year or calendar quarter, of estate tax in respect of the taxable estate of the same decedent, of tax imposed by chapter 41, 42, 43, or 44 with respect to any act (or failure to act) to which such petition relates for the same taxable period, in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount

cessors, as interpreted and applied by the Supreme Court in *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418 (1943), expressly deny the Tax Court jurisdiction to apply equitable recoupment.

We disagree with both of these arguments. The absence of an express statutory grant of jurisdiction does not bar us from considering the affirmative defense of equitable recoupment because, as an affirmative defense, it comes within our jurisdiction to redetermine petitioner's estate tax deficiency. Moreover, neither section 6214(b) or 6512(b) nor *Gooch Milling* denies us authority to apply equitable recoupment.

Respondent points out that we have consistently adhered to the view that we lack jurisdiction to apply equitable recoupment. See, e.g., *Estate of Schneider v. Commissioner*, 93 T.C. 568, 570 (1989); *Phillips Petroleum Co. v. Commissioner*, 92 T.C. 885, 888-890 (1989); *Poinier v. Commissioner*, 86 T.C. 478, 490-491 (1986), affd. in part and revd. in part 898 F.2d 917 (3d Cir. 1988); *Estate of Van Winkle v. Commissioner*, 51 T.C. 994, 999-1000 (1969); *Vandenberge v. Commissioner*, 3 T.C. 321, 327-328 (1944), affd. 147 F.2d 167 (5th Cir. 1945). However, in *United States v. Dalm, supra,* the Supreme Court adverted to the possibility that the Tax Court could have applied equitable recoupment, but stated that it had "no occasion to pass upon the question whether Dalm could have raised a recoupment claim in the Tax Court," *id.* at 611 n.8, because she had not raised the issue in her Tax Court petition. We therefore reconsider the issue in light of *Dalm*.[3]

In *United States v. Dalm, supra,* the taxpayer was administratrix of a decedent's estate and received fees for her services of $30,000 in 1976 and $7,000 in 1977. The decedent's sole heir also paid Mrs. Dalm $180,000 in 1976 and $133,813 in 1977, totaling one-third of the net estate, supposedly to carry out the decedent's intentions. The heir filed a Federal gift tax return for the calendar year 1976, and

shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

[3] See also *O'Brien v. United States*, 766 F.2d 1038, 1050 n.15 (7th Cir. 1985) (stating that "It is not clear whether the Tax Court currently possesses the equitable jurisdiction necessary to apply the equitable recoupment doctrine.").

Mrs. Dalm paid the gift tax on that transfer. Neither the heir nor Mrs. Dalm paid gift tax on the 1977 transfer.

In 1983, after the statutory limitation period had expired on the 1976 gift tax, the IRS determined that the $180,000 and $133,813 transfers to Mrs. Dalm in 1976 and 1977 were additional fees that she should have reported as income on her Federal income tax returns for the taxable years 1976 and 1977, and determined deficiencies in her income taxes for those years. Mrs. Dalm petitioned the Tax Court for a redetermination, arguing that the transfers were gifts excludable from gross income under section 102(a), rather than fees includable as income under section 61(a)(1). However, she did not raise in her Tax Court petition, as required by Rule 39, the affirmative defense of equitable recoupment.[4]

Two days after the trial of the income tax case in this Court, the parties settled. Mrs. Dalm agreed to pay reduced income tax deficiencies for the taxable years 1976 and 1977. Mrs. Dalm then filed an untimely administrative claim for refund of the 1976 gift tax, and thereafter brought suit in U.S. District Court after the IRS had failed to act on the claim within 6 months. The District Court granted summary judgment in favor of the Government and dismissed the case because the recoupment claim was time barred, stating that "no precedent has yet been discovered in which an independent lawsuit, such as this, has been maintained for a year in which the statute of limitations has run." *Dalm v. United States*, 89-1 USTC par. 13,806 (D. Mich. 1987). The U.S. Court of Appeals for the Sixth Circuit reversed, holding that the prerequisites for applying equitable recoupment had been satisfied and that the equitable recoupment claim was not an independent lawsuit different from the case in the Tax Court. *Dalm v. United States*, 867 F.2d 305, 310 (6th Cir. 1989). The Supreme Court granted the Government's petition for a writ of certiorari. *United States v. Dalm*, 493 U.S. 807 (1989).

---

[4] Rule 39 provides that

A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the statute of limitations. A mere denial in a responsive pleading will not be sufficient to raise any such issue.

See *Gustafson v. Commissioner*, 97 T.C. 85, 89-92 (1991) (if an affirmative defense is not pleaded, it is deemed waived).

In *Dalm* the factual requirements for equitable recoupment appear to have been satisfied; a single transaction (the 1976 transfer from the heir to the administratrix) had been subject to double taxation (gift tax and income tax) on the basis of inconsistent factual characterizations and legal theories (as both a gift and compensation). Cf. *Commissioner v. Duberstein*, 363 U.S. 278 (1960). Nonetheless, the Supreme Court reversed the Court of Appeals' decision on the ground that a claim for equitable recoupment of time-barred overpaid taxes could not, by itself, provide the jurisdictional basis for a tax refund suit in U.S. District Court. *United States v. Dalm*, 494 U.S. at 606-608. The Supreme Court stated that its past decisions in *Stone v. White*, 301 U.S. 532 (1937), and *Bull v. United States*, 295 U.S. 247 (1935),

stand only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction. * * * [*United States v. Dalm*, 494 U.S. at 608.]

Inasmuch as Mrs. Dalm was trying to use her recoupment claim offensively to support a separate time-barred claim for refund of overpaid gift tax, the Supreme Court reversed the Court of Appeals for the Sixth Circuit and reinstated the District Court's decision that it had no jurisdiction to adjudicate the taxpayer's equitable recoupment claim.

Dissenting in *United States v. Dalm*, 494 U.S. at 612-623, Justice Stevens disagreed with the majority's decision on the District Court's jurisdiction to hear Mrs. Dalm's claim for refund based on equitable recoupment, but commended the majority's reservation of the question whether the Tax Court has authority to consider recoupment. *Id.* at 615 n.3.[5]

---

[5] Justice Stevens noted that the parties had not disputed whether the Tax Court had authority to consider recoupment of the gift tax against the income tax, and, in the footnote, said:

See Rev. Rul. 71-56, 1971-1 Cum. Bull. 404, 405 ("[T]he Tax Court lacks jurisdiction to consider a plea of equitable recoupment"); see also *Estate of Schneider v. Commissioner*, 93 T.C. 568 (1989). In *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 303 (1946), we cited *Commissioner v. Gooch Milling & Elevator Co.*, 320 U.S. 418 (1943), for the proposition that the Tax Court has no jurisdiction to consider recoupment. A careful reading of the *Gooch Milling* opinion, and of the relevant statute, however, will show that it actually considered only the question of recoupment based on an overpayment in a year other than the year in dispute. I therefore commend the Court for its careful reservation of the issue, see *ante* at 611, n.8. It is nevertheless appropriate to assume for purposes of deciding the jurisdictional issue in this case that respondent's counsel correctly believed that no recoupment could be had in the Tax Court.

Of course, if this Court were eventually to decide the reserved issue by holding that the Tax Court has jurisdiction to hear an equitable recoupment claim, today's decision would become a

Respondent argues that we lack jurisdiction to apply the doctrine of equitable recoupment because there is no provision in the Internal Revenue Code granting us authority to do so. As respondent points out, the Tax Court is a court of limited jurisdiction that derives its authority from the Internal Revenue Code. Sec. 7442. However, exercising jurisdiction over petitioner's recoupment defense does not require us to exercise jurisdiction that is beyond the scope of petitioner's main claim for the redetermination of its estate tax deficiency.

Although petitioner is, in actuality, the "plaintiff" in this suit, it is entitled to raise affirmative defenses to respondent's deficiency determination, such as res judicata, collateral estoppel, estoppel, waiver, duress, and the statute of limitations. Rule 39; see *Woods v. Commissioner*, 92 T.C. 776, 784 (1989). In *Bull v. United States*, 295 U.S. 247, 260 (1935), the Supreme Court recognized that in tax refund cases, "the usual procedure for the recovery of debts is reversed * * *. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer." So it is in the Tax Court, where the taxpayer must sue the Commissioner of Internal Revenue to have a deficiency redetermined. As in the refund fora, the taxpayer in the Tax Court has the burden of proof. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111 (1933). When a taxpayer raises an affirmative defense to a deficiency determination, we need no additional source of jurisdiction to render a decision with respect to the defense. It is part of the entire action over which we have jurisdiction. As we said in *Naftel v. Commissioner*, 85 T.C. 527, 533 (1985), when a taxpayer petitions this Court for a redetermination of a deficiency, we take jurisdiction over the entire tax liability, not just the items determined to be erroneous by the Commissioner in the notice of deficiency. This is a proceeding to redetermine petitioner's estate tax deficiency, over which we clearly have jurisdiction. Therefore, in deciding this case, we may take into account all facts that bear on petitioner's deficiency and may apply equitable principles in so doing. *Woods v. Commissioner, supra* at 784-787.

---

dead letter. No taxpayer would have any reason to litigate the deficiency and the recoupment issues separately, and in any event a judgment upon the former would bar a subsequent suit upon the latter under the doctrine of res judicata.

[*United States v. Dalm*, 494 U.S. 596, 615 n.3 (1990) (Stevens, J., dissenting).]

In *Woods v. Commissioner, supra* at 784, we listed "numerous instances where we have applied equitable principles in deciding issues over which we had jurisdiction." These include the equity-based principles of waiver,[6] duty of consistency (quasi-estoppel),[7] estoppel,[8] substantial compliance,[9] abuse of discretion,[10] laches,[11] and the tax benefit rule.[12] In *Woods v. Commissioner, supra* at 789, we reformed an agreement to extend the statutory period of limitations on assessment by reason of the parties' mutual mistake in executing a Form 872-A. Thus, in a Tax Court proceeding, either party is free to raise equity-based defenses to the assertions of the other party, including equitable recoupment, and the Court, insofar as it has jurisdiction over the main claim, is free to entertain those defenses. "While we cannot expand our jurisdiction through equitable principles, we can apply equitable principles in the disposition of cases that come within our jurisdiction." *Id.* at 784-785 (quoting *Berkery v. Commissioner*, 90 T.C. 259, 270 (1988) (Hamblen, J., concurring)).

We find affirmative support for our decision today in sections 7422(e), 6512(a), and 7481. Section 7422(e) provides that when a petition is filed in the Tax Court, "the district court or the United States Claims Court, as the case may be, shall lose jurisdiction of taxpayer's suit [for refund] to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit". Further, section 6512(a) prohibits taxpayers from bringing suits for refund while simultaneously litigating the same issue in the Tax Court, and section 7481 provides for finality of Tax Court decisions, which have the effects of res judicata and collateral estoppel. *Commissioner v. Sunnen*, 333 U.S. 591 (1948); *Stern v. United States*, 563 F. Supp. 484, 487 (D. Nev. 1983). As we said in *Woods v. Commissioner, supra* at 788, these provi-

---

[6] *Armco, Inc. v. Commissioner*, 88 T.C. 946, 963 n.8 (1987); *Aero Rental v. Commissioner*, 64 T.C. 331, 338 (1975).

[7] *Unvert v. Commissioner*, 72 T.C. 807, 814-817 (1979), affd. 656 F.2d 483 (9th Cir. 1981); *Mayfair Minerals, Inc. v. Commissioner*, 56 T.C. 82 (1971), affd. per curiam 456 F.2d 622 (5th Cir. 1972).

[8] *Boulez v. Commissioner*, 76 T.C. 209, 214-217 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987).

[9] *Taylor v. Commissioner*, 67 T.C. 1071, 1077-1078 (1977).

[10] *Estate of Gardner v. Commissioner*, 82 T.C. 989 (1984).

[11] *Mecom v. Commissioner*, 101 T.C. 374 (1993); *Southern Pac. Transp. Co. v. Commissioner*, 75 T.C. 497, 840 (1980).

[12] *Rojas v. Commissioner*, 90 T.C. 1090 (1988), affd. 901 F.2d 810 (9th Cir. 1990); see also *Hillsboro Natl. Bank v. Commissioner*, 460 U.S. 370 (1983).

sions indicate that "Congress intended the Tax Court to have full judicial authority to resolve issues over which it has jurisdiction".

The combined effect of these sections is to channel tax litigation in the Tax Court, to make our decisions binding, and to preclude relitigation of the same issues in another forum. See *Estate of Ming v. Commissioner*, 62 T.C. 519 (1974). This statutory scheme indicates that Congress did not intend to restrict our application of legal and equitable principles to decide matters within our jurisdiction unless it specifically enacted such a limitation. * * * [*Id.* at 788-789.]

The origin of the view that the Tax Court lacks authority under sections 6214(b) and 6512(b) to apply equitable recoupment can be traced to one of the earliest Board of Tax Appeals decisions applying the doctrine of setoff.[13] *Barry v. Commissioner*, 1 B.T.A. 156 (1924). In that case, the Commissioner determined an overassessment of income tax for 1920 and a deficiency for 1921, and proposed that the taxpayer remit the excess of the 1921 deficiency over the 1920 overassessment. The taxpayer petitioned the Board, arguing that he had wrongfully been denied unrelated depreciation deductions for 1920 and 1921, and sought to have the unrelated 1920 overpayment attributable to the disallowed depreciation deductions credited, by way of setoff, against his 1921 deficiency. The Commissioner moved to dismiss the petition on the ground that the Board had no jurisdiction over the taxable year 1920, inasmuch as the Commissioner had not determined a deficiency for that year. The Board of Tax Appeals held that it had jurisdiction over the case and allowed the unrelated 1920 overpayment to offset the 1921 deficiency.

In 1926, Congress enacted section 274(g) of the Revenue Act of 1926, ch. 27, 44 Stat. 56, the statutory predecessor to section 6214(b).[14] This statute provided that in determining an income tax deficiency in respect of any taxable year the Board could consider such facts with respect to the taxes for

---

[13] On the differences between setoff and equitable recoupment, see *Dysart v. United States*, 169 Ct. Cl. 276, 281-282, 340 F.2d 624, 627-629 (1965); Saltzman, IRS Practice and Procedure, par. 5.06[1] and [2], at 5-41 (2d ed. 1991 & Supp. No. 2 1993); Andrews, "Modern-Day Equitable Recoupment and the 'Two Tax Effect:' Avoidance of the Statutes of Limitation in Federal Tax Controversies", 28 Ariz. L. Rev. 595, 615-619 (1986).

[14] Reenacted in later Revenue Acts as sec. 272(g), and then codified as such in the Internal Revenue Code of 1939, and later as sec. 6214(b) of the Internal Revenue Codes of 1954 and 1986.

the other taxable years as might be necessary to redetermine the amount of the deficiency, but in so doing would have no jurisdiction to determine whether the tax for other taxable years had been overpaid or underpaid. Thus, the statute precluded the Board from applying setoff to reduce a taxpayer's income tax deficiency for the taxable year before it by the amount of an unrelated income tax overpayment for another year, as it had done in *Barry v. Commissioner, supra.* However, there was nothing in section 274(g) of the Revenue Act of 1926 or its legislative history that indicates that Congress intended to deny the Board the power to apply the doctrine of equitable recoupment, a term not used in the statute, its legislative history, H. Rept. 1, 69th Cong., 1st Sess. 11 (1925), 1939-1 C.B. (Part 2), 315, 322, or the Board's opinion in *Barry v. Commissioner, supra.* Moreover, the facts of *Barry* did not lay the basis for an equitable recoupment defense by the taxpayer; the 1920 overpayment and the 1921 deficiency bore no relationship to each other. Thus, Congress could not have enacted section 274(g) of the 1926 Revenue Act in response to the Board's exercise of recoupment jurisdiction. However, the Board thereafter interpreted section 274(g), reenacted as section 272(g) of later Revenue Acts and the 1939 Code, in conjunction with section 322(d), I.R.C. 1939,[15] as denying it power to apply either setoff or equitable recoupment in income tax cases. See, e.g., *Red Wing Potteries, Inc. v. Commissioner,* 43 B.T.A. 841 (1941); *Heyl v. Commissioner,* 34 B.T.A. 223, 226 (1936); *Cornelius Cotton Mills v. Commissioner,* 4 B.T.A. 255, 256 (1926); see also Dubroff, The United States Tax Court: An Historical Analysis 484-485 (1979).

*Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418 (1943), presented the question whether the Board had authority to apply equitable recoupment in income tax cases.[16] In *Gooch Milling,* the Commissioner examined the

---

[15] Sec. 322(d), I.R.C. 1939, was the statutory predecessor to sec. 6512(b). See *supra* note 2.

[16] In 1938, Congress enacted the statutory mitigation provisions, currently secs. 1311-1314, to allow correction of inconsistent positions that otherwise would be barred by expiration of the statutory limitation period. Revenue Act of 1938, ch. 289, tit. V, sec. 820, 52 Stat. 447, 581, later codified as sec. 3801, I.R.C. 1939. The mitigation provisions were made retroactive to taxable years beginning Jan. 1, 1932, Revenue Act of 1938, ch. 289, tit. V, sec. 820(f), 52 Stat. 582, and ultimately provided relief to the taxpayer in *Gooch Milling & Elevator Co. v. United States,* 111 Ct. Cl. 576, 78 F. Supp. 94, 97 (1948).

The legislative history of the mitigation provisions makes clear that when they do not operate

taxpayer's books for the taxable year ending June 30, 1935, and determined that it had erroneously overvalued its closing inventory as of that date. This determination affected the opening inventory for the taxable year ending June 30, 1936, and resulted in income and excess profits tax deficiencies for 1936. However, because of the inventory revaluation, the taxpayer's ending inventory for the taxable year ending June 30, 1935, also changed. As a consequence of the revaluation, the taxpayer had overpaid its 1935 income and excess profits taxes. However, because the statutory limitation period had expired on the 1935 overpayment, the taxpayer could not recover it as a refund. The taxpayer petitioned the Board of Tax Appeals for a redetermination of the 1936 deficiency and, in its amended petition, sought to have the 1935 overpayment applied as an offset against the 1936 deficiency. On the basis of its previous decisions, which had relied on section 274(g) of the Revenue Act of 1926, the Board of Tax Appeals, in a Memorandum Opinion dated December 17, 1941, refused to grant this relief. *Commissioner v. Gooch Milling & Elevator Co., supra* at 419. The taxpayer appealed the Board's decision to the U.S. Court of Appeals for the Eighth Circuit, which reversed. *Gooch Milling & Elevator Co. v. Commissioner*, 133 F.2d 131, 134 (8th Cir. 1943). However, the Supreme Court reversed and held that the Board lacked jurisdiction to allow the 1935 income tax overpayment to be offset against the 1936 income tax deficiency.

Against this background, we interpret *Gooch Milling* as not preventing the Tax Court from considering the affirmative defense of equitable recoupment when it is properly raised in a timely suit for redetermination of a tax deficiency over which we have jurisdiction. See *United States v. Dalm*, 494 U.S. 596, 608 (1990). Further support for our holding that we have authority to apply equitable recoupment is that section 6214(b) specifically applies only to income and gift taxes and makes no mention of the estate tax. Because section 6214(b) omits any reference to the estate tax, *Commissioner v. Gooch Milling & Elevator Co., supra*, is not in point. Contrary to our holding in *Estate of Van Winkle v. Commis-*

---

to allow a party to obtain relief from inconsistent tax treatment, the courts are free to resort to judicial doctrines, including equitable recoupment, to correct errors resulting from inconsistent tax treatment. S. Rept. 1567, 75th Cong., 3d Sess. (1938), 1939-1 C.B. (Part 2) 779, 814-817; see *Woods v. Commissioner*, 92 T.C. 776, 786 (1989).

*sioner*, 51 T.C. 994 (1969), we find nothing in section 6214(b) that applies to the estate tax case now before us. As a result, we will no longer follow *Estate of Van Winkle* or any of our cases denying that we have authority to apply equitable recoupment.

In addition, section 6512(b), formerly section 322(d), I.R.C. 1939, does not preclude us from exercising jurisdiction over petitioner's equitable recoupment defense. Section 6512(b) simply confers authority, when we decide that a taxpayer has no deficiency but an overpayment of income tax, estate or gift tax, or certain excise taxes, to order the Commissioner to refund the overpayment. Sec. 6512(b)(2). As we explained in *Phillips Petroleum Co. v. Commissioner*, 92 T.C. 885, 889 (1989), "this Court's jurisdiction to determine an overpayment parallels its jurisdiction to redetermine a deficiency." Because this is not a proceeding for the redetermination of the trust's 1986 income tax deficiency, we cannot exercise section 6512(b) overpayment jurisdiction over the trust. However, this does not mean that we lack authority, in the exercise of our jurisdiction, to redetermine petitioner's estate tax deficiency by applying the doctrine of equitable recoupment.

Having concluded that we have authority to entertain petitioner's partial affirmative defense of equitable recoupment, we will deny respondent's motion to dismiss and order that this case be set for further proceedings.

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

SHIELDS, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WELLS, RUWE, COLVIN, HALPERN, CHIECHI, and LARO, *JJ.*, agree with the majority opinion.

---

HALPERN, *J.*, concurring: I agree with the majority and write separately only to address Judge Chabot's dissent.

Judge Chabot focuses narrowly on the precise role of this Court in the tax collection process. He observes that the Court's jurisdiction does not extend to enforcing collection: "this Court does not have jurisdiction to determine obligations to pay." Chabot op. p. 568. Because the Court does not

deal with such obligations, Judge Chabot would find no purchase within our jurisdiction on which the doctrine of equitable recoupment could rest: "equitable recoupment [does] not [fit] into the deficiency jurisdiction that the Congress has given to this Court." *Id.*

Certainly, I agree with Judge Chabot that the Tax Court is a court of limited jurisdiction. I also agree that the instant case appears to invoke only our jurisdiction to redetermine the correct amount of a deficiency. Chabot op. note 2. Nevertheless, we do exercise a portion of the judicial power of the United States, *Freytag v. Commissioner*, 501 U.S. ____, ____, 111 S. Ct. 2631, 2645 (1991), and Congress did intend us to have full judicial authority to resolve issues over which we have jurisdiction, *Woods v. Commissioner*, 92 T.C. 776, 788 (1989). Furthermore, equitable recoupment is a doctrine exercised by courts of law to render fundamental justice and equity in situations where a strict adherence to rules of pleading or the terms of the statutes of limitations would result in unfairness. See McConnell, "The Doctrine of Recoupment in Federal Taxation", 28 Va. L. Rev. 577 (1942). For those reasons, and taking a somewhat less restrictive view of what it is that we do, I would find adequate purchase in our jurisdiction on which to rest the doctrine of equitable recoupment.

## The Nature of Recoupment

"The word 'recoupment' is derived from the French 'recouper'—'to cut again.' It signifies the right or act of making a reduction, defalcation, or discount * * * to the claim of the plaintiff. * * * [It] is a common law concept." McConnell, *supra* at 577-578. "[Recoupment] is the keeping back of something that is due, because there is an equitable reason to withhold it". *Wheat v. Dotson*, 12 Ark. 699, 702 (1852).

The Supreme Court of Illinois explained how recoupment functions:

[Recoupment] adjusts by one action adverse claims growing out of the same subject-matter. * * * It is not necessary that the opposing claims should be of the same character. * * * *It is sufficient that the counter claims arise out of the same subject-matter, and that they are susceptible of adjustment in one action.* [*Stow v. Yarwood*, 14 Ill. 424, 426 (1853); emphasis added.]

Recoupment allowed the common law courts to overcome what might be described as jurisdictional limitations, and other limitations, that, normally, would have frustrated the claim of the party seeking relief. See, e.g., *Wheat v. Dotson, supra* at 701 ("When a defendant, in a suit upon a contract in a common law court, comes in and asks to be permitted to interpose a defense founded upon a partial failure of its consideration, he certainly applies for a kind of relief that would have been refused him there peremptorily at one period in the history of those courts, and which at that period could have been obtained only in the equity courts."). As one commentator put it:

in factual situations where recoupment could aptly be applied, even the rigidly technical attitude of the common law courts through the early, middle and later periods of common law development did not blind the eyes of the law judges to the practical necessity and fundamental reason in recoupment. * * * [McConnell, *supra* at 580.]

## Reasons for Recoupment

The reasons that compelled the old common law courts to allow recoupment are well known. See, e.g., *Dermott v. Jones*, 64 U.S. 220, 234 (1859); *Wheat v. Dotson, supra* at 703; *Stow v. Yarwood, supra* at 426. The common law courts were especially concerned with judicial administration factors such as the desire to "[avoid] circuity of action, [to avoid] multiplicity of suits, and [to do] complete justice in a single adjudication". McConnell, *supra* at 583; see also *Wheat v. Dotson, supra* at 703. One court stated that permitting recoupment is "perfectly just and equitable" and "calculated to do complete justice between the parties, without putting them to the expense of two suits". *Reab v. McAllister*, 8 Wend. 109, 117 (N.Y. 1831). In addition to the judicial resource concerns, however, it must be kept in mind that recoupment did (and does) not simply permit justice to be done in a single action, but the doctrine itself "tends to promote justice". *Stow v. Yarwood, supra* at 426. Thus, when the New York Court of Errors allowed recoupment, one member of the majority noted: "There is a natural equity, especially as to claims arising out of the same transaction, that one claim should compensate the other, and that the balance only should be recovered." *Reab v. McAllister, supra* at 115. Another judge in the

*Reab* majority stated "that equal and complete justice could not be meted" unless the defendant were permitted to set up evidence for recoupment. *Id.* at 119. Indeed, when the Supreme Court first applied recoupment in the Federal taxation context, the Court noted that to do otherwise would result in an "immoral" and "unjust" retention of funds. *Bull v. United States*, 295 U.S. 247, 261 (1935). Thus it occurred that the "rigid rules of the common law courts * * * materially yielded by a gradual process to the influence of common justice, common sense and common convenience." *Wheat v. Dotson, supra* at 703-704. It is difficult to deny that the administrative and fairness or equitable considerations of the common law courts should be of any less importance to us today.

## What We Do

Judge Chabot is right: What we do in exercising our jurisdiction to redetermine deficiencies is to correct, if necessary, the amount that the Secretary may assess as a tax. See sec. 6215. Assessment is a necessary stop on the route to enforced collection. See secs. 6201, 6203, 6303. Barring our reversal on appeal or some extraordinary set of circumstances, once we have redetermined a deficiency, the taxpayer has no further opportunity for judicial review of the demand that he can expect to receive from the Secretary. See secs. 7481, 7421; see also *United States v. Dalm*, 494 U.S. 596 (1990) (tax refund courts are without jurisdiction to consider time barred refund claim based solely upon equitable recoupment); *Commissioner v. Sunnen*, 333 U.S. 591 (1948) (final decisions of Tax Court have res judicata and collateral estoppel effect). I would, however, take a broader view of our function than does Judge Chabot. I would view our function as being integral to the enforced collection of Federal tax liability. Indeed, as we have stated, the Code is structured to channel tax litigation to the Tax Court. *Woods v. Commissioner*, 92 T.C. 776, 788-789 (1989). We are the tax forum of choice, because only here can the tax liability be litigated prior to payment. Understandably, we preside over the vast majority of tax litigation. What we do is so closely involved with the vast majority of litigated tax liabilities that I would conclude that, in a very real sense, what we do *is* to determine obligations to pay. For that reason, I would conclude that we can

apply recoupment: "[Recoupment] is the keeping back of something that is due, because there is an equitable reason to withhold it". *Wheat v. Dotson, supra* at 702. When it is equitable to do so, if the other requirements of recoupment are met, I believe that we have authority to apply the doctrine to reduce a deficiency.

WRIGHT, PARR, AND BEGHE, *JJ.*, agree with this concurring opinion.

---

CHABOT, *J.*, dissenting: The majority hold that this Court is authorized to apply the doctrine of equitable recoupment. However, they fail to consider whether equitable recoupment could be applied within the confines of our statutory jurisdiction, and they fail to consider the differences between this Court's work and the work of the refund fora that now apply the doctrine.

## I. *Tax Court's Jurisdiction*

"The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title" [i.e., title 26] and other statutes. Sec. 7442.[1]

The Tax Court has "jurisdiction to redetermine the correct amount of a deficiency".[2] Sec. 6214(a). "Deficiency" is a defined term. Sec. 6211. It depends generally on the relationship between the amount of the tax imposed on the taxpayer and the amount the taxpayer showed as the tax on the tax return. The amount of the tax imposed depends on a variety of factors, involving the nature of the tax. The instant case is an estate tax case, and the tax involved is imposed by subtitle B. The amount of the tax imposed is affected by inclusions, exclusions, deductions, and credits, all of which are specified by statute. In this instance, as we said at the start of our opinion in *Estate of Mueller v. Commissioner*, T.C. Memo. 1992-284, *"The sole issue for decision* is the date-of-

---

[1] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for the date the petition was filed in the instant case; except that references to sec. 6211 and other provisions affecting the amount of the deficiency are to sections of the Internal Revenue Code of 1986 as in effect for the date of decedent's death.

[2] The Tax Court has, and has had, many other categories of jurisdiction (e.g., declaratory judgment, sec. 6621(c), litigation costs, administrative costs, TEFRA partnership and subchapter S litigation, and overpayments) specifically granted by statute, but the instant case apparently involves only redetermination of a deficiency.

death fair market value of the 8,924 shares of common stock of the Mueller Co. (the company) included in the gross estate of Bessie I. Mueller (decedent)." (Emphasis added.)

The majority do not reveal to us where in subtitle B, or anywhere else in the Internal Revenue Code, is the element of petitioner's tax that might be affected by possible application of equitable recoupment. Obviously, equitable recoupment does not affect the amount shown as the tax on the taxpayer's tax return. It appears that the doctrine of equitable recoupment does not affect what we have already described as the "sole issue for decision" in the instant case, or any other element of the Internal Revenue Code that is to be taken into account in determining the amount of any deficiency in the instant case.

Thus, the majority appear to ignore both the structure and the letter of the Internal Revenue Code in their attempt to advise the parties that we have jurisdiction to apply equitable recoupment in the instant case.

## II. *Refund Fora's Jurisdiction*

The majority appear to analyze the problem of this Court's jurisdiction by reference to the general objective of the doctrine of equitable recoupment and the fact that the doctrine is applied in certain courts in refund cases.

This Court's jurisdiction focuses on redetermining a "deficiency", which compares (1) the tax imposed by the appropriate Code provision with (2) the tax shown on the tax return. In contrast, a refund suit before a District Court or the Court of Federal Claims depends on a showing that the tax collector has money which should be paid back to the taxpayer. The following description from Junghans & Becker, Federal Tax Litigation; Civil Practice and Procedure, par. 18.01 (2d ed. 1992), is a useful brief description of the situation.

### ¶ 18.01 THEORY OF TAXPAYER'S CASE

Tax refund suits brought by a taxpayer against the tax collector have long been recognized in the law[1] as actions in the nature of a suit for money had and received.[2] As stated by the Supreme Court, "[An] action, brought to recover a tax erroneously paid, although an action at law, is equitable in its function. It is the lineal successor of the common count *indebitatus assumpsit* for money had and received."[3]

The ultimate issue in a tax refund suit is whether the taxpayer has over-paid his taxes for the period in issue.[4] The Supreme Court has said that taxes are considered to have been overpaid whenever the taxpayer has made

any payment in excess of that which is properly due. Such an excess pay-ment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed by the tax-payer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes any overpayment.[5]

Thus, the taxpayer has a different burden of proof in a tax refund suit from that in a case filed in the Tax Court.[6] Unlike a Tax Court case, a tax refund suit is not, strictly speaking, a judicial review of the determina-tion of an administrative agency. Rather, it is a suit in which the taxpayer must establish that the government has money that it should refund to him.[7] Accordingly, in a tax refund suit, the taxpayer must not merely prove that the Internal Revenue Service (the Service) improperly made an assessment; he must go further and establish the correct amount of his tax liability for the periods in issue.[8] It is only when the court can ascertain the amount of tax that the taxpayer should have paid that it can ascertain whether there was an overpayment of tax and that a refund is due.[9] In sum, in a tax refund suit, the taxpayer's theory is that he can prove he overpaid his true tax liability for the taxable periods in issue.

---

[1] In the United States, tax refund suits were being litigated long before the creation of the Service. See, e.g., *Bend v. Hoyt*, 38 US 263 (1839).

[2] An action in assumpsit for money had and received is equitable in char-acter and lies, in general, whenever a defendant has received money that in equity and good conscience he ought to pay to plaintiff. Black's Law Dictionary 112 (5th ed. 1979).

[3] *Stone v. White*, 301 US 532, 534 (1937).

[4] Note that under Section 6402(a), only the Commissioner is allowed to refund overpayments of tax. See *Reinecke v. Spalding*, 280 US 227, 232-233 (1930).

[5] *Jones v. Liberty Glass Co.*, 332 US 524, 531 (1947); see also IRC §§ 6401, 6403 for Code definition of "overpayment," and note what [that?] it leaves open the possibility of other payments being treated as overpay-ments.

[6] See *infra* ¶ 18.03[1] and compare with ¶ 12.01.

[7] *Taylor v. Comm'r*, 70 F2d 619, 620-621 (2d Cir. 1934), aff'd sub nom. *Helvering v. Taylor*, 293 US 507 (1935).

[8] *United States v. Janis*, 428 US 433 (1976); *Taylor v. Comm'r*, *supra* note 7; *Lewis v. Reynolds*, 284 US 281 (1932); *Compton v. United States*, 334 F2d 212 (4th Cir. 1964); *Forbes v. Hassett*, 124 F2d 925 (1st Cir. 1942).

[9] *Decker v. Korth*, 219 F2d 732, 737 (10th Cir. 1955); *Hodoh v. United States*, 153 F.Supp. 822 (ND Ohio 1957).

In the context of considering whether the tax collector should refund to the taxpayer any specific amount of money

that the taxpayer has paid to the tax collector, there has developed the concept of equitable recoupment as a doctrine that affects the "oughtness" of any such refund. Thus, it may be more productive of understanding to say that equitable recoupment fits into the refund jurisdiction of certain fora, and not that those fora have equitable recoupment jurisdiction.

In contrast, this Court does not have jurisdiction to determine obligations to pay. Rather, this Court has jurisdiction to determine whether, and in what amount, there is a deficiency—a limited, statutorily defined term of art. With exceptions not relevant to the instant case, payments are not taken into account in determining the amount of a deficiency. E.g., *Logan v. Commissioner*, 86 T.C. 1222, 1227-1230 (1986). The question of whether the taxpayer "ought" to make more payments does not arise under our deficiency jurisdiction. Thus, it is not a matter of this Court's not having equitable recoupment jurisdiction, but rather of equitable recoupment not fitting into the deficiency jurisdiction that the Congress has given to this Court.

III. *Other Considerations*

(A) In their opinion, the majority state that equitable recoupment, "as an affirmative defense, * * * comes within our jurisdiction to redetermine petitioner's estate tax deficiency." Majority op. p. 553. The majority do not explain what element in the calculation of the deficiency under section 6211 would be altered by any decision to apply the doctrine of equitable recoupment.

(B) In their opinion, the majority refer us to *Naftel v. Commissioner*, 85 T.C. 527, 533 (1985), for the proposition that "when a taxpayer petitions this Court for a redetermination of a deficiency, we take jurisdiction over the entire tax liability, not just the items determined to be erroneous by the Commissioner in the notice of deficiency." Majority op. p. 556. Although this appears to be a reasonable description of what we said in *Naftel*, *Naftel* does not support the position of the majority in the instant case, but rather *Naftel* illustrates why the majority are wrong.

In *Naftel*, we dealt with the Commissioner's motion for summary judgment that we did not have jurisdiction to rule on the taxpayer's contentions regarding refund checks issued

by the Commissioner but not received by the taxpayer. We denied the motion, because we believed that resolution of the refund check question could affect the amount of the taxpayer's overpayment under section 6512(a), and we had jurisdiction to determine the amount, if any, of any such overpayment. In the instant case, by contrast, the majority make no effort to show how equitable recoupment would affect the amount of the deficiency otherwise resulting from our determination in *Estate of Mueller v. Commissioner*, T.C. Memo. 1992-284, and the majority appear to expressly negate the possibility of equitable recoupment effecting any overpayment. Majority op. p. 552.[3]

Similarly, in *Powerstein v. Commissioner*, 99 T.C. 466 (1992), we relied on *Naftel* in granting a taxpayer's motion to enjoin assessment pursuant to the authority expressly granted to this Court by the last two sentences of section 6213(a). As part of our analysis, we held that if a taxpayer's amended tax return clearly indicates that the taxpayer is protesting and not admitting the amount shown as the tax on the amended tax return, then this amount does not constitute "the amount shown as the tax by the taxpayer upon his return," within the meaning of section 6211(a)(1)(A). In coming to this conclusion, we relied on section 301.6211-1(a), Proced. & Admin. Regs. *Id.* at 474-475. In contrast, in the instant case, the majority do not suggest any basis in the Internal Revenue Code, or the regulations, or the case law for concluding that equitable recoupment would affect the amount of any deficiency to be entered.

(C) In their opinion, the majority state that they "find affirmative support * * * in sections 7422(e), 6512(a), and 7481." Majority op. p. 557. None of these sections provides a clue as to how application of the doctrine of equitable recoupment affects the amount of petitioner's deficiency in the instant case.

(D) Finally, it has been suggested that equitable recoupment might play a part in the definition of deficiency in that the amount to be equitably recouped—in the instant case, presumably the amount paid by the trust on an under-

---

[3] Compare the instant case with *Barton v. Commissioner*, 97 T.C. 548, 554-555 (1991), where we explained how we could have authority to deal with some matters under our overpayment jurisdiction even though we held in *White v. Commissioner*, 95 T.C. 209 (1990), that we did not have authority to deal with the same matters under our deficiency jurisdiction.

standing of the facts inconsistent with this Court's holding in *Estate of Mueller v. Commissioner*, T.C. Memo. 1992-284— may be taken into account under section 6211(a)(1)(B).

We have interpreted the wonderfully detailed definition of deficiency in section 6211[4] by giving effect to each element of that statutory definition.[5] E.g., *Patronik-Holder v.*

---

[4] Sec. 6211 provides as follows:

SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, estate, and gift taxes imposed by subtitles A and B and excise taxes imposed by chapters 41, 42, 43, 44, and 45 the term "deficiency" means the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, 44, or 45 exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b)(2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (A).—For purposes of this section—

(1) The tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to the payments on account of estimated tax, without regard to the credit under section 31, without regard to the credit under section 33, and without regard to any credits resulting from the collection of amounts assessed under section 6851 (relating to termination assessments).

(2) The term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45 was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made.

(3) The computation by the Secretary, pursuant to section 6014, of the tax imposed by chapter 1 shall be considered as having been made by the taxpayer and the tax so computed considered as shown by the taxpayer upon his return.

(4) For purposes of subsection (a)—

(A) any excess of the sum of the credits allowable under sections 32 and 34 over the tax imposed by subtitle A (determined without regard to such credits), and

(B) any excess of the sum of such credits as shown by the taxpayer on his return over the amount shown as the tax by the taxpayer on such return (determined without regard to such credits), shall be taken into account as negative amounts of tax.

(5) The amount withheld under section 4995(a) from amounts payable to any producer for crude oil removed during any taxable period (as defined in section 4996(b)(7)) which is not otherwise shown on a return by such producer shall be treated as tax shown by the producer on a return for the taxable period.

(6) Any liability for any amounts required to be withheld under section 4995(a) shall not be treated as a tax imposed by chapter 45.

[The subsequent amendments of this provision by sec. 10713(b)(2)(B) of the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330, 1330-470 (effective Dec. 22, 1987), and by secs. 1941(b)(2)(B)(i), 1941(b)(2)(B)(ii), 1941(b)(2)(C), and 1941(b)(2)(D) of the Omnibus Trade and Competitiveness Act of 1988, Pub. L. 100-418, 102 Stat. 1107, 1322-1323 (effective Aug. 23, 1988), do not affect the instant case.]

[Although decedent died in 1986, the above text reflects the amendment made by sec. 1015(r)(2) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3572-3573. This 1988 Act amendment is taken into account because it applies to notices of deficiency mailed after Nov. 10, 1988, and the notice of deficiency in the instant case was mailed Nov. 9, 1989.]

[5] As we noted in *Murphree v. Commissioner*, 87 T.C. 1309 (1986), some parts of the definition of deficiency may have been placed by the Congress outside sec. 6211; in *Murphree*, the definitional element appeared in what was then sec. 46(a)(10)(C)(ii). In *White v. Commissioner*, 95

*Commissioner*, 100 T.C. 374, 381 (1993); *Kroh v. Commissioner*, 98 T.C. 383, 392-397 (1992);[6] *Baldwin v. Commissioner*, 97 T.C. 704 (1991); *White v. Commissioner*, 95 T.C. 209 (1990). These recent opinions, two of them Court reviewed, make it clear that, in a deficiency case, it is not enough that there is a general desire to resolve real disputes between the Commissioner and a taxpayer; the dispute in question must fit into the detailed definition of the word "deficiency".

## IV. *Conclusion*

Because the equitable recoupment dispute between the parties does not fit into our deficiency jurisdiction, apparently cannot fit into our overpayment jurisdiction, and has not been suggested as fitting into any of our miscellaneous jurisdictions (see *supra* note 2), I would grant respondent's motion to dismiss petitioner's equitable recoupment affirmative defense. From the majority's decision to deny that motion, I respectfully dissent.

HAMBLEN, PARKER, COHEN, AND WHALEN, *JJ.,* agree with this dissenting opinion.

---

T.C. 209 (1990), we held in effect that an element of the definition of a deficiency appeared in sec. 6601(e)(1).

[6] Note that the dissent in *Kroh v. Commissioner*, 98 T.C. 383 (1992), goes only to the question of res judicata (*id.* at 404-413), and does not dispute the majority's conclusion that assessments against the taxpayer's husband do not affect the amount of the deficiency against the taxpayer, and that "we may adjudicate the correctness of * * * [the taxpayer's] tax deficiencies and additions to tax, in their entirety, as those amounts appear in the deficiency notices." *Id.* at 397.